657 A.2d 484

**In re BABY BOY S.**

**Appeal of DIANE S.**

Supreme Court of Pennsylvania.

Argued March 7, 1994.

Decided April 13, 1995.

John F. Hooper, Pittsburgh, for appellant.

Mark J. Goldberg, Kerri Lee Cappella, Goldberg, Gruener, Gentile, Voelker & Horoho, P.C., Pittsburgh, for Eugene & Pamela Klein.

John R. Kardos, Jr., Pittsburgh (Court-appointed), for Baby Boy Stratemier.

Ernest D. Preate, Jr., Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and CASTILLE, JJ.

### ORDER

PER CURIAM:

Appeal dismissed as having been improvidently granted.

MONTEMURO, J., who is sitting by designation, did not participate in the consideration or decision of this case.

PAPADAKOS, J., did not participate in the decision of this case.

CASTILLE, J., files a dissenting statement.

CASTILLE, Justice, dissenting.

I respectfully dissent from the decision of the Court to dismiss this appeal as having been improvidently granted. Notwithstanding the strength and consequence of petitioner's arguments, this Court's opinion is essential to draw attention to and implant in the common law an admonishment against actions such as the Orphans' Court's abdication of its duties in this matter.

At the outset, the Orphans' Court committed an egregious error of law by entertaining the involuntary termination petition in this case. A petition for the involuntary termination of another's parental rights may only be brought by (1) one of the child's natural parents; (2) an agency; (3) an individual in legal custody of the child who has filed a report of intention to adopt (*see In re: Adoption of J.F.*, 392 Pa.Super. 39, 44, 572 A.2d 223, 225 (1990) (the term "custody" refers only to legal custody, not mere physical custody); or (4) an individual standing *in loco parentis* to the child who has filed a report of intention to adopt. 23 Pa.C.S. § 2512(a). I agree with the Superior Court that the Kleins (the instant prospective adoptive parents) could not have gained standing to file the involuntary termination petition on any of the first three bases.

However, I disagree with the lower courts' conclusions, offered without meaningful analysis, that the Kleins gained

standing to file their petition by virtue of the fact that they stood *in loco parentis* to the child. Despite the fact that this Court has never addressed the precise legal meaning of the statutory phrase *in loco parentis* in this particular context, any rights acquired by the Kleins to act *in loco parentis* to the child arose *solely* by virtue of the entrustment agreement executed between the parties on May 18, 1989. That entrustment agreement allowed the Kleins to care for the child pending the contemplated adoption but the agreement was subject to a provision stating that the natural mother, Diane S., "may revoke the consent to the adoption of this child until a court has entered a decree terminating the parental rights and, unless a decree terminating parental rights has been entered, [Diane S.] may revoke the consent until a court enters the final adoption decree." Accordingly, that entrustment agreement was subject to Diane S.' unilateral revocation at any time prior to the entry of a final decree either terminating her parental rights or granting an adoption. *See In re: Adoption of Baby Girl Fleming*, 471 Pa. 73, 76–77, 369 A.2d 1200, 1202 (1977) (recanted voluntary termination petition cannot support an involuntary termination petition when the former is withdrawn before a final decree is issued and even though physical custody was relinquished for over six months). Here, Diane S. not only revoked her consent to the entrustment agreement less than two months later on July 7, 1989, but she also subsequently filed a petition with the Allegheny County Court of Common Pleas for a Citation to Show Cause why her child should not be returned to her. In so doing, Diane S. terminated the only legal means by which the Kleins could have asserted an *in loco parentis* relationship to the child. Indeed, from the time of Diane S.' revocation of the entrustment agreement to the present time, the Kleins have not had *any* supportable legally cognizable relationship with the child. Accordingly, even without reaching the question of whether the Kleins stood *in loco parentis* to the child, it is clear under the law that the Kleins had absolutely no basis upon which to assert standing to file the involuntary termination petition with the Orphans' Court.

Moreover, the Orphans' Court abused its discretion in terminating Diane S.' parental rights. Generally, the involuntary termination of one's parental rights is validly based only upon a clear showing of necessity. *In re: Geiger*, 459 Pa. 636, 639, 331 A.2d 172, 173–174 (1975). However, not only did the Orphans' Court in this case permit the Kleins to retain physical custody of the child in derogation of the clear mandate of the entrustment agreement that Diane S. could revoke the entrustment agreement at any time, but the court also based its decision to terminate Diane S.' parental rights in part on Diane S.' absence of contact and lack of bonding with her child together with the Kleins' bonding with the child which had by that point occurred, the results of which the court itself caused by its actions.

Indeed, without the Orphans' Court's intervention on the Kleins' behalf, the termination petition would have most likely failed from the sheer weight of its own inadequacy. For example, the social worker from the hospital at which Diane S. delivered her baby unequivocally testified that she did not have any concerns about Diane S.' ability to parent her child, asserting that Diane S. possessed the skills necessary to raise the child. Further, although the Kleins' psychological expert testified that Diane S. was intellectually slower and more emotionally immature than the average person, Diane S. was nevertheless capable of adequately providing for the physical needs of her child. Moreover, Ann Labish, the director of the women's shelter in which Diane S. sought assistance shortly after giving birth to her child, was obviously interested in more than the welfare of the mothers and the children in her care. Labish absolutely forbid Diane S.' contact with her family during the time she stayed at Labish's shelter facility. She further threatened to call Children and Youth Services if Diane S. attempted to leave the shelter with her baby. When Diane S. expressed her uncertainty in caring for her newborn baby, Labish presented the perfect family who was willing to adopt the child. Accordingly, it was probably because of the subtly coercive pressure applied by Labish that a vulnerable Diane S. relinquished physical custody of her child in the first place.

In short, there was nothing in the record to demonstrate that it was clearly necessary to terminate Diane S.' parental relationship with her child. Although Baby Boy S. was a newborn infant when his natural mother gave and then timely revoked her consent under the entrustment agreement, the child is now almost six years old and, due to the dilatory actions of the Orphans' Court, may only enjoy the love and care of his true mother when he reaches the age of majority sometime in the next century if he so chooses to reach out to his natural mother. It is this Court's duty to ensure the integrity and the continued respect for the Pennsylvania judicial system. To the extent we tolerate the Orphans' Court's actions in this case, we have unfortunately abdicated our responsibilities in this regard.

I join in the recommendation of Superior Court Judge John HESTER who urged that the matter be returned to the President Judge of the Allegheny County Court of Common Pleas with the order that he refer this matter to a judge other than the one who presided over the instant termination litigation for new proceedings consistent with Diane S.' timely revocation of the entrustment agreement and with this opinion.