675 A.2d 753

David E. MOLLANDER and Stacey J. Mollander, Appellants,

v.

Regina M. CHIODO.

David E. MOLLANDER and Stacey J. Mollander

v.

Regina M. CHIODO, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 10, 1996.

Filed May 8, 1996.

Lisa C. Coppolo, St. Marys, for Mollander.

Anthony V. Clarke, Olean, NY, for Chiodo.

Before TAMILIA, FORD ELLIOTT and EAKIN, JJ.

TAMILIA, Judge:

David E. and Stacey J. Mollander, prospective adoptive parents, appeal from the April 19, 1995 Order awarding primary legal and physical custody of child M.C., born April 4, 1992, to appellee/mother, and partial physical custody to appellants, as the parties may agree. Recently, this Court, in *Vicki N. v. Josephine N.*, 437 Pa.Super. 166, 649 A.2d 709 (1994), set forth the appropriate standards when reviewing a custody dispute involving a parent and third party.

The cases are legion in this Commonwealth that the paramount concern in issues of child custody is the best interest of the child, based on all factors which legitimately have an effect on the child's physical, intellectual, moral and spiritual well-being. *McMillen v. McMillen*, 529 Pa. 198, 602 A.2d 845 (1992); *Sawko v. Sawko*, 425 Pa.Super. 450, 625 A.2d 692 (1993).

> On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the factfinding function of

the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. See *Karis v. Karis,* 518 Pa. 601, 608, 544 A.2d 1328, 1332 (1988); *Lombardo v. Lombardo,* 515 Pa. 139, 147–48, 527 A.2d 525, 529 (1987); *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 236–37, 478 A.2d 800, 805–06 (1984). *Zummo v. Zummo,* 394 Pa.Super. 30, 53–55, 574 A.2d 1130, 1142 (1990).

In determining the appropriate standard for adjudication of custody disputes between a parent or parents and a third party, our Supreme Court adopted the carefully fashioned principles set forth by this Court in *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980).

In such cases,

The parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side. [*Hernandez* ] at 286, 376 A.2d at 654 (footnote omitted).

We agree that this approach is appropriate. Clearly these principles do not preclude an award of custody to the non-parent. Rather they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy.

*Id.* at 367–369, 416 A.2d at 514. The Supreme Court soon thereafter reiterated the standard in such cases was

not to be construed as precluding a custody award to a non-parent, absent a demonstration of the parent's dereliction. We again emphasize that the standard seeks only to stress the importance of parenthood as a factor in determining the best interests of the child. However, other factors which have significant impact on the well-being of the child can justify a finding in favor of the non-parent, even though the parent has not been shown to have been unfit.

*Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 328–329, 421 A.2d 157, 161 (1980).

Finally, this Court spoke again, enumerating the considerations which weigh against the elevation of parenthood above all other factors in custody determinations.

First, although parenthood is a highly important factor, it should not be accorded determinative weight in our decision. Other factors, like the value of stability, are also to be accorded great weight. Indeed, in *Ellerbe* itself the Supreme Court affirmed the trial court's grant of custody to grandparents over a parent of the subject child for the very reason that the child had developed a stable relationship with the grandparents and had a stable environment with them. The same basic situation was presented in *Albright,* and once again the grandparents were given custody. Second, the *Hernandez* standard is first and foremost an allocation of the burden of proof to the third parties, but it does not impose on them the burden of showing that the parent is unfit. Thus, the issue centers on the child, and not on the parent.

*Snarski v. Krincek,* 372 Pa.Super. 58, 76–78, 538 A.2d 1348, 1358 (1988).

*Vicki N.,* supra at 168–170, 649 A.2d at 710–711.[1]

Prior to addressing the custody dispute, we shall first review mother's cross-appeal claiming appellants lacked stand-

---

1. In *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995), the Pennsylvania Supreme Court recently considered the standard to be applied in deciding a custody dispute between parents and third parties. While the Court unanimously reversed the custody determination, the Court

ing to seek custody. According to the record, in July of 1992, mother, then 17 and unmarried, placed her three-month old daughter with appellants. Appellants obtained physical custody of M.C. on July 14, 1992 and filed a report of intention to adopt on July 29, 1992. On March 23, 1993, appellants filed a petition for adoption, to which was attached mother's consent to adoption dated July 28, 1992. At this point, mother returned to Florida, her home state. Subsequently, mother returned to Pennsylvania and filed a motion to revoke her consent, which the trial court granted by Order of May 24, 1993. On June 11, 1993, mother filed a petition for a hearing to dismiss appellants' adoption proceedings and to regain custody of M.C. On July 19, 1993, appellants filed the present custody complaint in which they claimed to stand "in loco parentis" to M.C.

Mother claims, first, she lacked the capacity for a proper assignment of custody because she was a minor, appellants and their extended family had exerted undue influence and pressure on her to sign the consent, and she was in a state of extreme emotional distress due to the recent death of her father. As such, appellants attained "in loco parentis" status under improper circumstances and thus do not have standing to pursue the matter. Mother also claims, in the alternative, that appellants only obtained "in loco parentis" status to the

was divided three-three on reconsideration of the presumption of parents' prima facie right to custody. Justice Flaherty, joined by Justices Nix and Castile, would have "abandon[ed] the presumption that a parent has a prima facie right to custody as against third parties," and instead "mandat[ed] that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration.*" *Id.* at 444, 668 A.2d at 128 (emphasis in original).

The Concurring Opinion by Justice Montemuro, however, found "no particular advantage in dispensing with the 'presumption' " and found "no reason to alter a process which already takes into proper account both the ideal and the reality of parental behavior." *Id.* at 452, 668 A.2d at 130–131.

While we are not bound to follow the plurality decision in *Rowles,* we point out that changing the applicable standard in this matter would not change the result.

We are also cognizant of this Court's decision in *Campbell v. Campbell,* 448 Pa.Super. 533, 672 A.2d 835 (1996), wherein the possible trend toward the elimination of a natural parent's presumptive right to custody was recognized.

extent they could pursue involuntary termination of parental rights during the period when the adoption was pending. Once the consent to said adoption properly was withdrawn, this status ended.

■ After our thorough review of the record, we find appellants achieved loco parentis status and have standing to challenge the custody of M.C.

The phrase "in loco parentis" refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*Cardamone v. Elshoff*, 442 Pa.Super. 263, 659 A.2d 575 (1995).

Initially, we find no merit to mother's contention she was coerced into signing the adoption agreement and she was under extreme emotional distress due to the death of her father, therefore appellants achieved in loco parentis status as the result of improper circumstances. Rather, the trial court, responding to these alleged improper circumstances, noted that "there has been a great deal of testimony under the circumstances of which [M.C.] was placed with the Mollanders." (N.T., 4/12/95, pp. 271–272.) The court continued, "I'm not persuaded and I do not think that circumstances were such that there was a conspiracy or that anyone acted in bad faith or attempted to steal or appropriate this child. It appears to me that the parties, everyone involved, was acting with good intention, I think motivated by some legitimate concern for [M.C.] given the circumstances that Regina was in at the time." *Id.* As for mother's status as a minor, it is an unfortunate truth that many adoption-related cases entail a great deal of emotional distress for the biological mother and, many times, the biological parent is a minor. This does not, however, negate the actions of the parties who assume parental responsibilities and obligations. Here, both parties agree mother had little or no contact with the child from July of 1992 until she returned to Pennsylvania in March of 1993 during

which time appellants were the primary caretakers of M.C. Furthermore, from March, 1993 until the present Order was entered on April 19, 1995, appellants continued to be the primary caretakers of M.C. with mother exercising continued visitation and partial physical custody of M.C. Accordingly, we find the trial court did not err in finding appellants achieved in loco parentis status.

Next, we find appellants maintained "in loco parentis" status after mother revoked her consent to adoption and thus have standing to seek custody, and in support of this decision rely on our decision in *In Re: Baby Boy S.*, 420 Pa.Super. 37, 615 A.2d 1355 (1991), *aff'd* Per Curiam, 540 Pa. 302, 657 A.2d 484 (1995). As in the case here, the mother in *Baby Boy S.* was a teenage girl who gave birth to a child out of wedlock, the relationship which produced the child had been superficial and of short duration, and the mother's family, which the court termed dysfunctional, was unable to offer her assistance. After giving birth, the mother moved in with a woman who had opened her home as a shelter for abused and neglected children and teenage unwed mothers, and shortly thereafter gave custody of her child to prospective adoptive parents, after having executed an entrustment agreement whereby the prospective adoptive parents agreed to return the child if the mother changed her mind. After the prospective adoptive parents filed a notice of intention to adopt, the mother revoked her consent and demanded the return of the child. The prospective adoptive parents then filed a Complaint for Custody, and petitioned for termination of the mother's parental rights.

The biological mother claimed that the prospective adoptive parents lacked standing to proceed with a termination action on the basis that no blood relationship existed between the third parties and the child, they were never granted custody by the court, and the mother revoked the entrustment agreement. In rejecting the mother's argument, this Court stated:

Appellant's revocation of the entrustment agreement, despite the fact that it could by statute occur at any time prior to entry of a final decree of adoption, nevertheless operated

as an automatic eraser of standing no more than does any other revocation of consent to placement of the child out of the natural parent's control. For example, a temporary placement of a child in foster care is not automatically ended by the natural parent's attempt to retrieve the child, nor does the attempt deprive the agency to which the child was surrendered of the standing to contest the retrieval.

Appellant would have us believe that upon revocation of consent by the natural mother, the adoptive parents are faced with no option other than returning the child, and that with loss of physical custody standing is also compromised. However, this court has concluded, albeit in a different context, that even removal of a child from the home of prospective adoptive parents does not preclude their protesting such removal, or from prosecuting a previously filed petition to adopt. Standing to seek termination of parental rights has also been found in prospective adoptive parents who received custody from an agency, and where the custodians of the child received him from relatives of the mother, with no agency acting as intermediary. We have also ruled, in a case having certain features in common with this one, that where the natural mother has revoked her relinquishment of parental rights shortly after the child has been received by the adoptive parents, they can return the child, or, "if they ha[ve] any basis for doing so, [can] file[ ] a petition under the Adoption Act asking the court to terminate [the mother's] parental rights involuntarily."

*Id.* at 43, 615 A.2d at 1357–1358 (citations omitted) (footnote omitted).

Furthermore, we find mother's reliance upon *T.J.B. v. E.C.*, 438 Pa.Super. 529, 652 A.2d 936 (1995), misplaced as her revocation of the consent for adoption in no way altered appellants' in loco parentis status, rather, it merely terminated the adoption proceeding. The trial court correctly distinguished *T.J.B.* from the present case as the prospective adoptive parents in *T.J.B.* did not file a complaint in custody but rather proceeded under the Adoption Act and its statutory requirements. Finding appellants have standing to pursue

custody, we shall now turn to their contention the trial court's award of primary physical and legal custody to appellee was manifestly unreasonable. Specifically, appellants contend the trial judge placed undue weight on the status of appellee as a parent, while ignoring the best interests of the child.

The trial court, in awarding custody to appellee, considered the following:

> I have considerable concerns about Regina. I don't mean to be over familiar, Miss Chiodo. In terms of psychological testimony from Dennis Vaughn and of the report of Doctor Addis indicating that the relationship between Miss Chiodo and [M.C.] may be one of sisters, sister [rather] than parent to daughter. I have some concerns about the concerns Doctor Addis expresses about the validity of the psychological profile. I think Mr. Vaughn also indicates that. I have some concerns about your maturity and the fact that you are not steadily employed and on a career path. Having said that, on the plus side I think there's also been abundant evidence that you are motivated by care and concern for [M.C.] and your genuine love for her. You have provided apparently a place for her to live which is clean and safe. You have undertaken efforts to educate yourself about parenting skills and the testimony of Miss Strayer that she has observed you, I believe ten times, in the apartment and other times at the Family Center and parenting appears to be appropriate and [M.C.] appears to be safe and comfortable in your care. In addition, although there are concerns that I have expressed about your ability, it also appears that support services are in place to assist you in your care of [M.C.] Weighing all of this it is my opinion that the law of Pennsylvania requires that primary physical custody by awarded to Regina Chiodo.

(N.T. at 273–274.)

After our review of the transcripts and analysis set forth by the trial court, we find the court carefully balanced all of the relevant factors and weighed the evidence presented pursuant to the standards set forth in *Vicki N., supra.* Ac-

cordingly, we do not find the trial court's award of custody manifestly unreasonable.

Order affirmed.