## Clark v. Boal

C.P. of Clearfield County, no. 95-862-C.D.

*Michael J. Saglimben,* for plaintiffs.
*Timothy E. Durant,* for defendant.

AMMERMAN, *J.*, July 18, 1997—The above-captioned matter came before this court for hearing relative to issues pertaining to the custody of August Lynn Boal (d.o.b. 08/23/92). Hearings had previously been held on July 19, August 17, and September 26, 1995 regarding the issue of plaintiffs' standing to seek primary custody. By opinion and order dated January 24, 1996,

this court determined that plaintiffs, who are third parties unrelated to the child, stood in loco parentis to August and did indeed have standing to proceed. Testimony regarding the issue of primary custody was taken on October 2 and October 4, 1996, as well as on February 19, February 20, February 26, and February 28, 1997, and thereafter the parties timely submitted briefs.[1]

Initially, this court's decision in this case must involve consideration of the standard to be applied in deciding a custody dispute between third parties and a natural parent. In 1980, the Pennsylvania Supreme Court articulated the standard in favor of a natural parent's prima facie right to custody in disputes between parents and third parties. *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980). The court's decision in *Ellerbe* was, in part, based upon the rule discussed in the Superior Court's prior decision of *In re Custody of Hernandez,* 249 Pa. Super. 274, 376 A.2d 648 (1977) which decision initially discussed the standard to be applied in custody disputes between parents and third parties. However, in 1995, the Pennsylvania Supreme Court departed from the presumption in favor of natural parents in the plurality decision of *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995). In *Rowles,* the natural mother and father had two very young children and were living with the father's parents. Two months after the birth of the second child, mother and father moved out of the grandparents' home, leaving the children in the care of the grandparents. A year and a half later, pursuant to divorce proceedings, mother and father named the grandparents as guardians of the children and granted them primary physical custody; the two children con-

---

1. The child's natural father, defendant Robert Boal, has never appeared before this court and played no role in these proceedings.

tinued to live with, and were raised by, the grandparents. Six months later, the mother petitioned the lower court for the children to be returned to her and to be given custody. The lower court ruled in favor of the grandparents and on appeal the Superior Court affirmed the lower court's decision. Three years after the original petition was filed by mother, the Pennsylvania Supreme Court reversed and awarded custody of the children to the mother. Adopting the rationale as set forth in the concurring opinion of *Ellerbe,* authored by Justice Flaherty, the *Rowles* court abandoned the presumption that a natural parent has a prima facie right to custody as against third parties, and instead followed the rule as stated in the concurring opinion of *Ellerbe* as follows:

"By clearly eliminating the presumption [in favor of a natural parent] per se, and mandating that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration,* custody proceedings would be disentangled from the burden of applying a presumption that merely beclouds the ultimate concern in these cases: determination of what affiliation will best serve the child's interests, including physical, emotional, intellectual, moral, and spiritual well-being." *Id.* at 373-74, 416 A.2d at 517. (emphasis in original)

The first reported appellate case to cite *Rowles* was *Campbell v. Campbell,* 448 Pa. Super. 640, 672 A.2d 835 (1996) filed March 11, 1996. This York County case involved the paternal grandparents and the mother of two children ages 9 and 7 who had been voluntarily placed by the mother in the custody of the grandparents on many occasions. Father is an alcoholic on disability who rarely saw the children. Eventually the grandparents obtained partial and then full custody. This appeal before the Superior Court involved the issue of standing of the grandparents rather than the proper standard to be

applied in deciding a custody dispute between parents and third parties. Standing was affirmed. In *Campbell,* by Justice Hester, *supra* at 643, 672 A.2d at 836, two of the panel members indicate that *Rowles* changed the standard of proof between parents and third parties. Justice Cavanaugh did not join in the reasoning but only concurred in the result.

The second reported appellate case to reference *Rowles* was *Mollander v. Chiodo,* 450 Pa. Super. 247, 675 A.2d 753 (1996) filed May 8, 1996. This McKean County case involved the prospective adoptive parents challenging an award of primary custody of a child to the natural mother following her revocation of consent to adopt. The mother, at the age of 17 years, had left her 3-month-old daughter with the adoptive parents for 11 months after which she filed a petition to dismiss adoption proceedings and regain custody. Twenty-two months later the trial court returned custody of the then 3-year-old child to the mother, and the Superior Court by a unanimous panel affirmed. The Superior Court determined, that while the prospective adoptive parents had standing as they had achieved "in loco parentis" status, the trial court's award of custody to the mother would be affirmed. The trial court evidenced considerable concern about the now 20-year-old mother's lack of maturity and lack of employment skills but found her to be motivated by love, care and concern for her child. The trial court also noted that mother had provided a clean and safe place for the child to live and that upon visits and observations by the social worker, the mother's parenting seemed appropriate and the child seemed to be safe and comfortable in the mother's care. The trial court also noted that there were support services available to assist the mother in her child care.

In *Mollander, supra* at 251 n.1, 675 A.2d at 755 n.1, the Superior Court panel opined that, while they were "not bound to follow the plurality decision in

*Rowles,"* even changing the applicable standard to that as set forth in *Rowles* would not change the result in the case. The Superior Court reaffirmed the viability of the principles contained in *Ellerbe* and *In re Custody of Hernandez.*

The third reported appellate case to cite *Rowles* was *Gancas v. Schultz,* 453 Pa. Super. 324, 683 A.2d 1207 (1996) filed August 20, 1996. This Allegheny County case involved the filing of a petition by former husband to prevent ex-spouse from relocating with their child to New Jersey. The trial court awarded custody to father, and mother appealed. The Superior Court reversed and remanded. This relocation case with a per curiam opinion merely cites *Rowles* for the proposition that "[a] custody determination requires a process of comparing and weighing the relevant facts of the competing custodial environments." *Gancas, supra* at 337, 683 A.2d at 1213. One of the items the court found dispositive in the reversal was that the trial court failed to weigh, inter alia, the following item:

"For example, Mother contends that the trial court failed to consider that absent compelling reasons to the contrary, it is the policy of this Commonwealth to raise siblings together whenever possible. *Pilon v. Pilon,* 342 Pa. Super. 52, 492 A.2d 59 (1985). Moreover, this policy applies equally to half-siblings. *Wiskoski v. Wiskoski,* 427 Pa. Super. 531, 629 A.2d 996 (1993), citing *In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983). Thus, Mother contends the trial court failed to consider that Elizabeth had developed a close relationship with her brother, Brandon. Mother presented evidence of this close relationship at trial." *Id.* at 337-38, 683 A.2d at 1213.

The final reported appellate case to cite *Rowles* is *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 682 A.2d 1314 (1996) filed on September 19, 1996. This Philadelphia County case involved standing in a custody dispute between a natural mother and her former lesbian partner

as to a 3 1/2-year-old child. The trial court denied standing to the partner, and the three judge panel of the Superior Court reversed and remanded. In this opinion by Justice Beck, the following is stated regarding the evidentiary burden of third parties:

"We note that in *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995), the Pennsylvania Supreme Court reexamined the appropriate standard of proof in custody disputes between a parent and a non-parent. The opinion announcing the judgment of the court sought to abandon the presumption in favor of the parent in such cases, instead treating parenthood as a significant, although not paramount, factor in determining custody. *Id.* at 446-48, 668 A.2d at 128. That view, however, failed to command a majority of the court, and as a result, *Ellerbe, supra,* which recognized the presumption, remains the law of this Commonwealth. See *Mollander v. Chiodo,* 450 Pa. Super. 247, 250 n.1, 675 A.2d 753, 755 n.1 (1996). Dictum by this court in *Campbell, supra,* suggesting that *Rowles* changed the standard of proof in such cases is not binding upon this court or the trial courts. Moreover, even if the position espoused by the lead opinion in *Rowles* becomes law, the more flexible standard employed in that case would still grant some special protection to the parent in custody disputes with non-parents." *Id.* at 88 n.2, 682 A.2d at 1319 n.2.

Following this court's review of these applicable cases, it is this court's conclusion that the standard as set forth in the majority opinion of *Ellerbe* is still the law in Pennsylvania, and that the Supreme Court's plurality decision in *Rowles* did not overrule *Ellerbe.* The presumption in favor of the natural parent in custody disputes with third parties remains the law of this Commonwealth, and will be utilized in this case. The plaintiffs therefore bear the burden of production and persuasion, and their burden to show they should receive primary custody is heavy.

This court also reviewed several other cases, all decided before the Supreme Court's decision in *Rowles,* where custody was granted to the third party over the natural parent. See *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980)—custody dispute between father and maternal grandparents following mother's death. The 9- and 14-year-old boys had each resided with the grandparents for *many* years and strongly desired to remain; *Cardamone v. Elshoff,* 442 Pa. Super. 263, 659 A.2d 575 (1995)—custody dispute between maternal aunt and mother involving 15-year-old daughter. Aunt awarded custody where daughter strongly preferred living with aunt, and mother had history of homelessness, drug addiction and alcoholism (decided five months prior to *Rowles*); *Vicky N. v. Josephine N.,* 437 Pa. Super. 166, 649 A.2d 709 (1994)—maternal aunt had child since mother abandoned her at hospital following child's birth for placement in foster care or adoption. Mother's health was declining due to cancer, mother had an alcohol problem and history of violent physical confrontations with father when they drank too much; and *Snarski v. Krincek,* 372 Pa. Super. 58, 538 A.2d 1348 (1988)—maternal grandparents awarded custody of 8-year-old boy against father where mother was deceased. The child had lived with grandparents for six and one-half years of his eight years; father not able to provide any stability for son; father not involved in child's upbringing; father had abandoned his second son (to deceased mother) who was in custody of father's now divorced second wife.

Moving to the facts of this particular case, it must be noted that this matter is the most unusual custody dispute which has yet come before this court.

Plaintiffs are third parties who are unrelated by blood or marriage to the child or either defendant. As reflected in this court's opinion of January 24, 1996, plaintiff

Mrs. Alice J. Clark and her daughter Betsy Clark began their contact with August as daytime babysitters of not only August but defendant Cathy J. Boal's other children. Without reiterating matters previously described in the above noted opinion, over a period of time the babysitting by Mrs. Clark and Betsy steadily increased until it reached seven days per week, day and night. This court had already found that Mother "for the most part abandoned August over time to the care of Mr. and Mrs. Clark and their daughter . . . ." Opinion of January 24, 1996, p. 5. As a result of numerous temporary orders entered in this case, August has continued to reside in the primary custody of the plaintiffs, with Mother being afforded liberal rights of partial custody.

This court has had an extremely difficult time in reaching what it believes to be an appropriate decision in this case, given the current status of the law and an analysis of all factors involved. This includes an evaluation on a long-term basis of what is in the best interest of August versus the rights afforded to Mother with whom August's siblings reside. As set forth herein, Mother as a natural parent is afforded a presumption of a prima facie right to custody of her own child. Mother's other three children, Codey Cole (d.o.b. 04/29/96), Leo Coder Jr. (d.o.b. 08/17/94) and Bobbi Sue Boal (d.o.b. 01/28/91) all reside with Mother and are August's siblings or half-siblings. As previously noted in the case of *Pilon v. Pilon, supra,* the appellate courts of our Commonwealth grant significant protection to the relationship of siblings, and it is the policy of this Commonwealth not to split up children absent compelling reasons. This is normally referred to as the Family Unity Doctrine. There is also evidence in this case that August enjoys a good relationship with Mother's other children, particularly with Bobbi Sue,

who is close to her age. The extent of this relationship was not only testified to by Mother and her relatives, but also confirmed by the employees of Clearfield County Children, Youth and Family Services who observed August interacting with her siblings during supervised visits at the CYFS office. Therefore, when analyzing the evidence in this case, there are two factors highly favorable to Mother. They are the presumption in her favor as the natural mother and that there must be a compelling reason to separate August from her sister and two half brothers.

There is no question in this case but that the plaintiffs' daughter, Betsy, plays a major role in regard to the plaintiffs' request for primary physical custody of August. At the time of the original filing of the action, Betsy had not reached the age of 18. If she had been of majority age at that time, there is little doubt in this court's mind that she would have been a plaintiff with her parents, or would have been the sole plaintiff. Generally speaking, it is clear that Mrs. Clark and Betsy were placed by Mother in the position of primary caretakers for August and over time formed a strong bond, deep affection and love for the child. Clearly, Mr. and Mrs. Clark and Betsy now believe that they are better able and suited to care, and provide a more appropriate upbringing, for August. This court must agree with that position. However, the question is whether this fact outweighs the factors in favor of Mother.

From the eight total days of hearings held before the court (three days on the issue of standing and five days on the issue of custody), there is no doubt but that the plaintiffs are better suited to provide for August. If the sole inquiry in this case involved this court making a determination of what party would best serve the child's physical, emotional, intellectual, moral and spiri-

tual well-being, as per a custody dispute between natural parents, physical custody would be awarded to the plaintiffs. Testimony showed that the plaintiffs and their daughter Betsy have provided a stable and healthy environment for August. Their home is clean and August has her own bedroom, clothing and toys; activities and appropriate medical and dental care have been provided. Without question the Clarks and their daughter love August very much and are very attached to her. Dr. Allen Ryen, licensed child psychologist, indicated that Mr. Clark and Alice have an "excellent rapport with August, probably constituting a primary parental bond." Plaintiffs exhibit "3." Plaintiffs are without doubt better able to facilitate a religious upbringing and training for August. See *Stolarick v. Novak,* 401 Pa. Super. 171, 584 A.2d 1034 (1991). The court notes that the testimony of Cathy Boal's mother, Leita Harris, relative she and Mother going to church was not credible. The testimony has also shown that the plaintiffs' family is more level-headed, less subject to strife and less liable to use foul language in front of children. This was confirmed by the independent testimony of Robert Desmitt as well as from other witnesses throughout the long course of proceedings.

In regard to Mother, the court must agree with the plaintiffs' position that since June 1995 the defendant and her children have changed residences on no fewer than five separate occasions, thereby showing a less than desirable level of stability in this regard. This is so even taking into account the grease fire at the Edgewood apartment (caused by the misguided efforts of Mother and her paramour to prepare popcorn in a pan of hot grease) and the alleged difficulties with the boiler at the Mahaffey apartment. The court also noted Mother's extremely poor judgment in allowing August, and her

other female child, to be in the unsupervised company of Aaron Straw, Mother's relative who was adjudicated delinquent on an indecent assault offense against Mother's sister's 8-year-old daughter. It seemed extremely odd to this court that no one associated with the defendant, *i.e.*, her extended family, seemed to show or have any concern whatsoever regarding this sexual offense against a juvenile on the part of Mr. Straw. It would seem to the court that at the very least, Mother and her family would require some level of supervision of Mr. Straw's contact with the minor female children, at least for some period of time and/or until Mr. Straw successfully completed some course of counseling. Mother's attempt during her testimony to minimize Mr. Straw's prior contact with her children was not only transparent but conflicted with that of her other witnesses.

Mother's propensity for less than normal personal stability and judgment was confirmed by Dr. Ryen's analysis. Plaintiffs' exhibit "2." Dr. Ryen found Mother's nurturant and emphatic skills to be minimal and seriously questioned her ability to appropriately react to stress, amongst other factors. These judgment difficulties can further be evidenced by Mother allowing her fiance's sister, Robin Padgett, to baby-sit her children. As observed by this court, Ms. Padgett clearly was not completely competent and Mother herself admitted that Ms. Padgett had some mental problems and was "not completely there." The court also believes that Mother's judgment can be questioned in allowing the entire family to previously stay overnight on at least two occasions (possibly more) with Ms. Padgett at the Fulton Street apartment. This apartment had two bedrooms, a living room and kitchen with Ms. Padgett, her boyfriend and two children, Mother, James Cole

III, Bobbi Sue, August, Codey and Leo Jr. all staying overnight. Even with Mr. Cole working the night shift at Wal-Mart, clearly any sleeping arrangement based on these circumstances is undesirable.

Mother's current apartment on Merrill Street also leaves much to be desired, with only two bedrooms being available for August, three other children and Mother and Mr. Cole. Although the testimony by Mother was that August (during periods of Mother's partial custody) shares a bedroom with Bobbi Sue and that Mother and Mr. Cole sleep in the living room, this arrangement can be contrasted with that at the plaintiffs' home where August has her own bedroom.

Notwithstanding the evidence showing that the plaintiffs are better suited to care for August and provide for her emotional, intellectual, moral and spiritual well-being, the evidence also showed that Mother is able to meet minimum standards in caring, and providing an appropriate residence, for her children. Testimony of Tom Flango, caseworker for CYFS, described his dealings with Mother over a period of approximately one year from May 1993. During that time, Mother's residence met CYFS's required standards and the children living with Mother were cared for in an adequate manner. This was also confirmed at a later date through the testimony of CYFS's caseworker, Chet Thompson, who had been at Mother's apartment on four or five occasions and had also observed Mother's visits with August at the agency's office. Therefore, this court cannot find that Mother is incapable of providing an environment and level of care for her children which meet minimal standards as required by the Department of Public Welfare under the Child Protective Services Laws, 23 Pa.C.S. §6301 et seq., and regulations relating thereto. Testimony showed that Mother has not had

her children taken from her through any dependency actions notwithstanding CYFS's dealing with her over a period of time commencing when her daughter Tara Boal was killed in a pedestrian/automobile accident on May 3, 1993.

Mother and her witnesses went to great lengths during the hearings in regard to the question of standing to deny that she had abandoned August with the Clarks. Even though the court indicated in its previous opinion that this testimony was not found to be credible, Mother has continued to take the same position during hearings on the issue of primary physical custody. The continuation of an argument that the court previously found to be without credibility does not particularly serve Mother's interests in this case. This court notes the possibility exists that the escalation of Mother's leaving August in the care of the Clarks was facilitated at least in part by her mental status following the death of her daughter Tara in the automobile accident. It was in approximately April/May 1993 that August began sleeping overnight on weekends at the Clarks'. August's contact with the Clarks continued to increase, and in approximately July 1993 it had reached the point where August was staying with the Clarks seven days per week. The testimony of Mr. Flango was clear regarding the emotional difficulties that Mother went through following Tara's death, and that Mother's treatment was facilitated by Mr. Flango's efforts. Apparently, Mother sought some type of counseling which helped her to deal with Tara's death and enabled her to appropriately (at her low level) deal with her responsibilities and children. An analogy can be made to the factual scenario in *Rowles,* where the Supreme Court found that the natural mother acted responsibly in leaving the children with the paternal grandparents during the period of her

instability. Mother has not taken this position, obviously because she does not want to admit that she allowed the plaintiffs to assume the care of August.

At this point, it would be appropriate for this court to note its continuing problem with the general credibility of Mother and many of her witnesses. Mother's responses to cross-examination exhibited her attempts at selective memory and she, and many of the defense witnesses, in many instances suffer from the same lack of credibility as this court found following the hearings on plaintiffs' standing. On the other hand, the court found the plaintiffs and their witnesses to be reliable and does not question their credibility. This court has taken these credibility issues into account when fashioning this opinion.

The court also notes the continuing arguments by Mother that the plaintiffs have consistently denied additional periods of partial custody to Mother over and above what this court has ordered. Mother thereby argues she, as a primary custodial parent, is best suited to facilitate periods of partial custody of August with the plaintiffs. 23 Pa.C.S. §5303(a). See *Moore v. Moore,* 393 Pa. Super. 256, 574 A.2d 105 (1990). This court does not so find, and under the circumstances of this unusual case would expect nothing less than what has obviously occurred: feelings are very negative on the part of both sides against the other. This court therefore finds that neither party can be said to be better able to facilitate partial custody with the other.

Having made a determination as to the facts of the case as shown by the evidence, this court must now apply the applicable law thereto. When considering the presumption giving Mother a prima facie right to custody of her own child, coupled with the heavy burden of proof thereby placed upon the third-party plaintiffs to show Mother's unfitness, and the evidence that Mother meets minimal standards mandated by the De-

partment of Public Welfare, this court must return custody of August to her Mother, Cathy J. Boal. It is a consideration of this court in reaching this decision that August be reunited with her sister and half brothers. It is noted that in the event this case involved a custody dispute between natural parents, the level of instability and poor judgment on the part of Mother would be enough for this court to find a compelling reason to separate the child from the siblings and award custody to a stable natural father. However, that is not the case before the court.

The court also notes that Mother's level of instability as shown by the evidence in this case is not as extreme as that set forth regarding the natural parents in the other cases reviewed in this opinion where third parties obtained custody. In addition, the child in this case had not been initially left by Mother with the third party for a multiple-year period, nor has the child reached an age where the child's strong desire to remain with the third party could be taken into account. Although the functional abilities and judgment of Mother have been significantly questioned by the court, the fact remains that she is able to meet minimal levels as required by law, and care for August's siblings.

As a final comment, the court notes that the decision in this case was extremely close. Unlike the decision in *Mollander, supra,* in the event that this court were applying the significant factor analysis as set forth in *Rowles,* the result would be changed and this court would be awarding primary physical custody of August to the plaintiffs.

## ORDER

Now, July 18, 1997, it is the order of this court as follows:

(1) Legal and primary physical custody of August Boal shall be with her natural mother, Cathy J. Boal. Possession of the child shall be provided to Mother by the plaintiffs on Friday, August 1, 1997 no later than 6 p.m.

(2) The plaintiffs, Alice J. Clark and Roy D. Clark, shall have the following rights of partial custody with August:

(a) On alternating weekends from Friday at 4 p.m. and continuing until Sunday at 6 p.m. plaintiffs' first alternating weekend period of partial custody will commence as of Friday, August 8, 1997;

(b) Each Tuesday and Thursday evening, commencing with Tuesday, August 5, 1997, from 4 p.m. until 8 p.m.;

(c) Plaintiffs and Cathy J. Boal will alternate custody/partial custody of the following holidays: Labor Day, Thanksgiving Day, New Year's Day, Easter, Memorial Day and July 4th, as well as the child's birthday. Plaintiffs' alternating holiday partial custody will commence with Thanksgiving 1997. For each alternating holiday as set forth herein the plaintiffs shall have partial custody of August from 10 a.m. continuing until 7 p.m. In the event that any of the above holidays to which the plaintiffs are entitled to a period of partial custody fall on a Monday immediately preceding a period of the plaintiffs' alternating weekend partial custody, in that event the plaintiffs shall be entitled to retain the child over Sunday night and shall return the child to the custody of Mother no later than 7 p.m. on said Monday holiday;

(d) For purposes of Christmas of each year, the parties will alternate custody/partial custody of the child. Beginning with Christmas of 1997, the plaintiffs shall have the child from 10 a.m. until 7 p.m. on Christmas

Day. For Christmas 1998, the plaintiffs shall have the child Christmas Eve (December 24) beginning at 4 p.m. and continuing until 10 a.m. on Christmas Day. Plaintiffs' periods of Christmas partial custody shall alternate thereafter based upon the same terms and conditions as set forth above.

(e) Any period of holiday custody/partial custody as set forth herein shall take precedence over any other period of plaintiffs' partial custody or Mother's custody;

(f) The party who is to obtain the child shall be responsible for transportation;

(g) Plaintiffs shall also be entitled to a total of two separate two week periods of partial custody with the child during the summer months of June, July and August, beginning with summer 1998. Unless otherwise agreed by the parties, the plaintiffs' two separate periods of partial custody as aforesaid shall each commence on a Saturday at noon continuing until the second Saturday thereafter at noon. There shall be a minimum of two weeks between each two week period of partial custody as described herein. Plaintiffs shall give Mother notice, in writing, as to when they intend to exercise each of the said two periods of two weeks summer partial custody at least 15 days in advance of each of same.

(3) Neither party shall, nor shall they allow anyone else to, smoke any tobacco products in the presence of the child. In the presence of the child is defined as anywhere within any home, residence or apartment where the child resides or is located or in any automobile of any type whatsoever in which the child is located or being transported.

(4) The natural mother shall not permit the child to be in the unsupervised presence of Aaron Straw at any time. Mother or some other responsible adult is

required to be in the presence of the child at any time that Mr. Straw is around the child.

(5) Under absolutely no circumstances will Mother permit August to be babysat, watched or supervised at any time by Robin Padgett. August, even while in the company of Mother, shall not be permitted to stay overnight at Robin Padgett's residence.

(6) Mother shall ensure that the child has her own bed in a bedroom which is not to be shared by more than August and one other of her siblings, although the court notes it would be preferable if the child had her own bedroom.

(7) Mother shall at all times keep the plaintiffs advised as to her address and telephone number. In the event Mother intends to move to a new residence at any time, she will advise the plaintiffs, in writing, of the same in advance and as to her new address and telephone number.

(8) Mother shall not relocate outside of the Commonwealth of Pennsylvania without this court's permission.