**Jerry and Judy BURNETT, Appellants,**

**v.**

**Ruby VERSTREATE, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 31, 1999.

Filed Dec. 3, 1999.

Gerald A. Keene, Waverly, N.Y., for appellants.

Fred N. Smith, Towanda, for appellee.

Before JOHNSON, JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellants/paternal grandparents, Jerry and Judy Burnett, appeal from the May 18, 1998 Order granting appellee/mother, Ruby Verstreate, legal and primary physical custody of her daughter, Kassandra, and the July 7, 1998 Order (as corrected by the Order of July 22, 1998) awarding appellants partial custody.[1]

¶ 2 The minor child, Kassandra, was born on April 5, 1989 to appellee and appellants' son, Thomas Burnett, who lived together until early 1992. After the couple separated, the child remained in the physical custody of her father. On May 14, 1996, Thomas Burnett was awarded legal and primary physical custody and appellee was awarded partial custody. Due to Thomas Burnett's work schedule and, later, physical disability, however, appellants acted as temporary caretakers of the child until November 1996 when, after a dispute with appellants, Thomas Burnett resumed his role as primary caretaker. Shortly thereafter, in December 1996, appellee commenced her suit for custody of the child and appellants petitioned for grandparent visitation. The court denied appellants' petition and set a date for a preliminary custody conference. In April 1997, while Thomas Burnett recuperated from an operation, the child was placed in appellants' custody and, thereafter, on January 5, 1998, appellants filed a complaint for custody against appellee and Thomas Burnett. A hearing was conducted on March 17, 1998, wherein the court found appellants had standing to seek legal and physical custody of the child. On May 6, 1998, appellee was awarded legal and physical custody of the child and on July 7, 1998 appellants were awarded partial custody. This timely appeal followed.

¶ 3 Appellants raise three questions for our review:

I. Did the lower court err in its application of the law regarding custody disputes between a parent and a grandparent?

II. Did the lower court err in awarding custody of the minor child to the Appellee?

III. Did the lower court err in its order granting visitation [partial custody] to the Appellants?

¶ 4 Recently, this Court, in *Cardamone v. Elshoff*, 442 Pa.Super. 263, 659 A.2d 575 (1995), set forth the appropriate standard

---

1. The Order in this case categorizes the award of partial custody to the grandparents as "temporary custody and visitation". In accordance with the legal definitions established by the Custody Act, 23 Pa.C.S. § 5302, *Definitions*, the award in this case is that of "partial custody" (the right to take possession of a child away from the custodial parent for a certain period of time).

of review in a custody dispute involving a parent and a third party.

> The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that had no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Id.* at 578–79 (citations omitted).

¶ 5 Appellants contend the trial court failed to apply the correct law regarding a custody dispute between a natural parent and grandparents, relying on the Supreme Court's decision in *Rowles v. Rowles*, 542 Pa. 443, 668 A.2d 126 (1995), for the proposition that the Supreme Court has "explicitly abandoned the presumption that a parent has a prima facie right to custody of their child as against third parties." Appellants' Brief at 11. In *Rowles*, the Supreme Court was divided three-three on reconsideration of the presumption of parents' *prima facie* right to custody. Justice Flaherty, joined by Justices Nix and Castille would have replaced the *prima facie* presumption with a rule that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration. Id.* at 444, 668 A.2d at 128 (emphasis in original). The Concurring Opinion by Justice Montemurro, joined by Justices Zappala and Cappy, however, found "no particular advantage in dispensing with the 'presumption'" and found "no reason to alter a process which already takes into proper account both the

ideal and the reality of parental behavior." *Id.* at 452, 668 A.2d at 130–31.

¶ 6 In *Mollander v. Chiodo*, 450 Pa.Super. 247, 675 A.2d 753 (1996), this Court recognized the possible trend toward the elimination of a natural parent's presumptive right to custody but held this Court is not bound by the plurality decision in *Rowles*. This Court reiterated the standard of *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980):

> [T]he parents have 'a *prima facie* right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*Mollander*, 675 A.2d at 754 (citations omitted).

¶ 7 The trial court did not err by applying the *prima facie* presumption to this custody matter and did not fail to properly assess the evidence presented. The court recognized the appropriate standard set forth in *Ellerbe, supra*, and properly evaluated three days of testimony regarding the parties' lifestyles, home environments, personal relationships and contact with the child. While we do not wish to diminish appellants' substantial, positive influence on the child, we find no indication that the trial court's custody Order was unsupported by the record.

¶ 8 The court in this case has been the sole arbiter of the custody litigation involving Kassandra. The initial custody action in 1996 pitted the parents against each other for the custody of the child. Under the facts of the case, as they existed at that time, the best interest of the child appeared to favor custody with the father.

While the court avoided characterizing the mother as unfit, the court found that the most stable relationship for Kassandra would be achieved with the father as primary custodian. In actuality, while the father had a live-in partner, Ms. Mingos, to aid in this performance, between the award of custody to the father in May 1996 (and before) and the change in that award in July 1998, the de facto caretakers were Jerry and Judy Burnett, the paternal grandparents. Their care of the child was all that could be wished, however, that alone cannot be the determining factor in this case. If such were the case, no parent who is out of custody, regardless of the reformation and improvement in lifestyle or parenting ability, could obtain the return of custody. The record supports the trial court's belief in the mother's redemption and also mandates she be given the opportunity to exercise her right as a parent, particularly since the child evinces a strong desire to live with her.

¶ 9 Appellants claim the trial court presumed the best interest of the child required placing her with appellee unless appellants proved appellee unfit. They argue the trial court required a showing of appellee's unfitness in order to grant custody to appellants because the court's Opinion emphasized appellee's progress in life since the last custody determination. The facts of this case and the findings of the trial court do not compel reliance on the presumption favoring the natural parent or the test of fitness being the make weight to trigger the presumption.

■■■ ¶ 10 It is clear that in matters of custody and visitation, the ultimate consideration of the court is a determination of what is in the best interests of the child. *Bupp v. Bupp*, 718 A.2d 1278, 1281 (Pa.Super.1998). Although a third party carries a heavy burden to prove that he or she can best provide for the child, it is not necessary to show that the parent is unfit. *In re David L.C.*, 376 Pa.Super. 615, 546 A.2d 694 (1988). In this case, the trial court addressed appellee's relationship with the child, her contact with the child's school and her ability to provide a stable home. The trial court did not, however, allude to a standard whereby appellants were required to prove appellee's unfitness as a parent, but rather, the trial court properly discussed the substantial amount of testimony regarding appellee's lifestyle and her present capacity to be the person best able to fulfill Kassandra's needs. The trial court recognized implicitly that in situations such as this, while perfection may not be attained, there is an optimum time wherein a child must be reunited with the biological parent due to the progress obtained by that parent in his or her capacity to care for the child, and the age, maturing and natural yearning of the child to be reunited with the parent. If the opportunity is not taken, the long term prognosis for reuniting parent and child decreases into hopelessness on the part of both. That failure to achieve unity can be a haunting burden on the lives of both parent and child for as long as they live.

¶ 11 Appellants also argue the trial court's findings are unreasonable in light of the recommendation of the court-appointed psychologist and the court-appointed child-advocate, both of whom recommended the child remain in the custody of appellants, while not ruling out the workability of a change in custody.

■■■ ¶ 12 On issues of credibility and weight of the evidence, appellate courts must defer to the findings of the trial judge who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *Robinson v. Robinson*, 538 Pa. 52, 645 A.2d 836 (1994). The parties cannot dictate the amount of weight the trial court places on evidence. *Id.* In this case, Mr. Cornwall's report reassured the court that awarding custody to appellee would be proper under the circumstances. This required the court to apply the presumption that, all things being equal, the natural parent has a *prima facie* right to custody as against a third party. (Trial Court Opinion, Smith, J., 12/23/98, at 3–4.) Mr. Cornwall believed a change in custody

was possible, and even desirable, with the cooperation of the parties (N.T., 5/6/98, at 10). The child's counsel agreed with Mr. Cornwall's assessment, however, as legal counsel for the child, his arguments were simply persuasive, and the court was not bound to address his position.

¶ 13 Finally, appellants argue the partial custody Order provides inadequate contact with the child, who is accustomed to spending extensive time in their home, and, therefore, is not in the child's best interest. They further contend the trial court Order was inadequate in light of the child's preference to visit with appellants every other week. While this argument is persuasive and contains considerable merit, it is not within our capacity as an appellate court to substitute our discretion or findings for those of the trial court.

¶ 14 The best interest and permanent welfare of the child govern visitation determinations. *Etter v. Rose*, 454 Pa.Super. 138, 684 A.2d 1092, 1093 (1996). The court must consider all factors which legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Id.* Upon review of the record, we find the trial court might have given greater weight to the wishes of Kassandra to be with the grandparents more frequently on weekends but he did not abuse his discretion in not doing so. The partial custody awarded appellants for one weekend each month, three weeks each summer and part of the child's Christmas holiday vacation is fundamentally adequate. In its Opinion, the trial court expressed concern over the amount of time required to travel from appellee's home in New York to appellants' home in Pennsylvania, stating "it would not be appropriate to subject a child of Kassandra's age to more frequent travel." (Trial Court Opinion at 3.) The court sought to preserve the strong bond between appellants and the child but did not agree with the child's preference to visit appellants every other week, noting "the child was naïve both about the burdens of travel that would have been placed upon the mother and the paternal grandparents and about the potential for physical and mental exhaustion which the child might suffer from so much time being devoted to highway travel." *Id.* at 3, 5. The argument could be made that during this period of transition, the child would be less likely to have second thoughts about separating from her grandparents if greater partial custody was permitted, but we can do nothing more than suggest the trial court carefully monitor this aspect of the partial custody Order. The record supports the trial court's findings in all respects.

¶ 15 In light of the foregoing discussion, we find no abuse of discretion in the trial court's Order of May 18, 1998 awarding legal and primary physical custody of Kassandra to her mother. As to the grandparents' award of partial physical custody, it is consistent with a considered evaluation and weighing of the facts and law and is affirmed. The Order of July 7, 1998 regarding partial custody, summer and holiday vacations and transportation is likewise affirmed.

¶ 16 The Order of May 18, 1998 as to legal and primary physical custody of Kassandra is affirmed. The Order of July 7, 1998 as to appellants' periods of partial physical custody is also affirmed.

¶ 17 Jurisdiction relinquished.