668 A.2d 126

**Michelle A. ROWLES, Appellant,**

v.

**David E. ROWLES**

v.

**Blair ROWLES and Julia Rowles, husband and wife, and Donna Jean Rowles, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1995.

Decided Nov. 29, 1995.

444

Thomas M. Dickey, Altoona, for Michelle Rowles.

John R. Ryan, Clearfield, for Julia and Blair Rowles.

Betsy D. Sanders, State College, for David Rowles.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

FLAHERTY, Justice.

This appeal involves our reconsideration of the standard to be applied in deciding a custody dispute between parents and third parties. The children are Royce Edward Rowles, born March 17, 1988, and Kaitlyn Louise Rowles, born May 2, 1990, of Michelle A. Rowles, appellant, and David E. Rowles. In December, 1989, the parents, David and Michelle, together with their only child, Royce, moved into the home of David's

parents, Blair and Julia Rowles, and sister, Donna Jean Rowles, appellees. In July, 1990, two months after Kaitlyn was born, in order to resolve marital problems without affecting the children adversely, the parents moved out of the grandparents' home, leaving the children in the physical custody of the grandparents.

A year and a half later, in February, 1992, in pursuance of divorce proceedings, the parties executed a guardianship agreement in which the parents named appellees guardians of the children and granted appellees physical custody. In May, 1992, the guardianship agreement was incorporated into a divorce decree terminating the parents' marriage.

Six months later, on November 3, 1992, the mother petitioned for the physical custody of her children. Following hearings, the trial court ordered that primary physical custody be retained by the grandparents. The Superior Court affirmed. We granted allocatur both to review the legal standard governing a custody dispute between parents and third parties and to review its application in this case.

Thus the first issue is to determine the proper standard which controls custody disputes between parents and third parties. The trial court acknowledged that the rule of *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980), applied in this case, giving parents a prima facie right to custody of their children, though the presumption in favor of parents as against third parties is not conclusive. The Superior Court likewise identified the case of *Ellerbe* as setting forth the rule governing custody cases between parents and third parties, but cited several additional cases in which custody was denied parents despite the presumption in their favor: *e.g., Albright v. Com. ex rel. Fetters*, 491 Pa. 320, 327, 421 A.2d 157, 160 (1980) and *Snarski v. Krincek*, 372 Pa.Super. 58, 538 A.2d 1348 (1988).

In *Ellerbe*, this court was confronted with a custody contest between a parent and a third party. A majority of the court adopted the rule of *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977), and articulated its new standard as follows:

[P]arents have a "prima facie right to custody," which "may be forfeited if convincing reasons appear that the best interests of the child will be served by awarding custody to someone else." ... [T]he Superior Court, through Judge Spaeth, articulated the following approach:

"When the judge is hearing a dispute between the parents, or a parent, and a third party, ... [t]he question still is, what is in the child's best interest? However, the parties do not start out even; the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. . . .

We agree that this approach is appropriate. Clearly these principles do not preclude an award of custody to the nonparent. Rather they simply instruct the hearing judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy.

. . . .

Thus where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence the proper course is to award custody to the parent or parents."

*Ellerbe v. Hooks,* 490 Pa. at 367–69, 416 A.2d at 513–14 (citations omitted).

A concurring opinion by this author, joined by Mr. Justice, now Chief Justice, Nix, questioned the legitimacy of recognizing "a prima facie presumption that parents have a *right* to custody of their children as against third parties." *Id.* at 371–72, 416 A.2d at 516 (emphasis in original) (Flaherty, J., concurring). The opinion explained the vulnerability of the presumption as follows:

In *Commonwealth ex rel. Spriggs v. Carson,* [470 Pa. 290, 368 A.2d 635] [ (1977) ], where we overruled the "tender years" presumption that custody should be awarded to

mothers rather than fathers, we stated: "Courts should be wary of deciding matters as sensitive as questions of custody by the invocation of 'presumptions'. Instead, we believe that our courts should inquire into the circumstances and relationships of all the parties involved and reach a determination based solely upon the facts of the case before the Court." The same reasoning should apply where the custody dispute is between parents and third parties.

. . . [T]he underlying tenor of the "presumption" reflects an archaic concept that children are proprietary assets of parents. Serious question may be posed with respect to the soundness of the apriorism that mere biological relationship assures solicitude, care, devotion, and love for one's offspring. . . .[1] [W]here a third party better fulfills these needs, or where other circumstances indicate third party custody to be preferable, the courts, when exercising judgment as to a child's welfare, should not be restrained solely by a presumption.

. . . .

[The majority's] approach should be replaced with a rule which would simplify and clarify application of the best interest standard. By clearly eliminating the presumption *per se,* and mandating that custody be determined by a preponderance of evidence, *weighing parenthood as a strong factor for consideration,* custody proceedings would be disentangled from the burden of applying a presumption that merely beclouds the ultimate concern in these cases: the determination of what affiliation will best serve the child's interests, including physical, emotional, intellectual, moral, and spiritual well-being.

*Id.,* 490 Pa. at 372–74, 416 A.2d at 516–17 (citation omitted, emphasis in original) (Flaherty, J., concurring). For the reasons stated in the concurring opinion, we now abandon the presumption that a parent has a prima facie right to custody

1. Indeed, the majority opinion recognized as much, stating: "Experience has taught the unhappy lesson that the parental relationship is not an infallible guarantee that the parent will provide the care and concern essential to a child's proper development." *Ellerbe,* 490 Pa. at 368, 416 A.2d at 514.

448

as against third parties, and follow the rule enunciated in the last paragraph of the above quotation.

Thus there is no single overriding factor; rather, courts should consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of a child. Parenthood, though not paramount, will always be a factor of significant weight. In *Ellerbe*, both opinions, representing all seven justices, agreed on several principles: "the parent-child relationship should be considered to be of importance in determining which custody arrangement is in the child's best interest," "special weight" and "deference" should be accorded the parent-child relationship, and the relationship should not be disturbed "without some showing of harm" or unless circumstances "clearly indicate the appropriateness of awarding custody to a non-parent." *Id.*, 490 Pa. at 366, 369, 370, 373, 416 A.2d at 513, 514, 515, 516–17. We adhere to these principles, for, in general, parents have a deep, abiding commitment to the well-being of their children.

Having identified the standard governing custody disputes between parents and third parties, we turn to the application of the standard in this case. The trial court found a number of facts which, in its judgment, outweighed the mother's claim for custody.

First, the trial court listed a set of facts recognizing good qualities of the grandparents: they are in good mental and physical health; are morally fit; and properly provide love, affection, guidance, education, and religious training.

Second, the children had resided with the grandparents in a stable environment for far more than the twelve months which would give the grandparents standing under 23 Pa.C.S. § 5313 to seek partial custody or visitation. The court emphasized the importance of this fact based on the authority of *Jackson v. Garland*, 424 Pa.Super. 378, 622 A.2d 969 (1993) and *Gradwell v. Strausser*, 416 Pa.Super. 118, 610 A.2d 999 (1992).

The final set of factors identified by the trial court contrasts the stability of the grandparents' home with the instability of the parents'. The grandparents have demonstrated more

permanency as a family unit than the parents have done. Both parents have recently established new relationships since their divorce. Finally, the trial court found that "[t]he children have been exposed to chaotic conditions throughout their lives as a result of marital difficulties between the parents, and the home of the grandparents has proven to be the single stabilizing factor in the children's lives...." In reaching this conclusion, the court echoed the findings held to be dispositive in *Albright, supra,* 491 Pa. at 327, 421 A.2d at 160.

The Superior Court cited the facts found by the trial court and found them to support the award of custody to the grandparents. For the reasons that follow, we disagree.

The first basis for the trial court's custody award—the good qualities of the grandparents—is not persuasive. A custody determination requires a process of comparing and weighing the relevant facts of the competing custodial environments. The trial court recited admirable facts about the grandparents without making any reference to the mother's comparable qualifications which appear in the record of this case. It is disingenuous to commend one party for its virtues while omitting all reference to the other party's equally favorable qualifications. The record leads to the conclusion that the first explanation for the decision does not support the award of custody to the grandparents rather than the mother, but rather supports both parties equally.

The second and third grounds for the decision boil down to the conclusion that the grandparents provided a stable custodial environment for the children for the two and a half years preceding the mother's petition for custody. There is no question that young children crave stability and that the ability to provide a stable environment is, like parenthood, a factor worthy of weighty consideration by the trial court.[2] Yet

---

2. This is borne out by three decisions of this court cited in the Superior Court opinion: *Ellerbe, Albright,* and *Snarski, supra.* It is ironic that *Ellerbe,* the case establishing the presumption of a parent's prima facie right to custody, awarded custody to a grandmother over the claim of the father.

it is possible to give excessive weight to this consideration, in effect raising it to the status of a controlling factor.[3]

Moreover, the conclusion that "the children have been exposed to chaotic conditions throughout their lives as a result of marital difficulties between the parents," is simply not true, based on our review of the record. Rather, the children were *not* exposed to chaotic conditions precisely because of the good judgment of the parents who yielded custody to the grandparents to spare the children the disruption attending the parents' marital breakdown. We think it would be unjust to penalize the mother's responsible decision to insulate her children from her marital difficulties by surrendering custody temporarily to their grandparents, and to weigh this as a significant factor justifying the denial of custody in this proceeding.

In addition, it is not true that the grandparents' home has been the single stabilizing factor in the children's lives. The record confirms that the mother had *daily* contact with the children during the period they were in the custody of the grandparents. The mother routinely spent several hours in the grandparents' home with her children after work until bedtime, and her children visited her home for overnight visits on alternating weekends. It is readily apparent that the mother was very much a part of the stable environment the children enjoyed while residing with the grandparents. To transfer custody to the mother would change little more than the children's sleeping arrangements, for the mother has been a daily part of the children's lives; moreover, the record

3. *Ellerbe, Albright,* and *Snarski* are distinguishable from this case on the basis ably set forth by Judge Ford Elliott, dissenting in the Superior Court. The subject in *Ellerbe* had resided with her grandmother for nine of her eleven years. Likewise, in *Albright,* the children had lived with their mother or grandparents for ten years; when the mother died, the court awarded custody to the grandparents rather than the father. In *Snarski,* grandparents merited custody after the child had lived with them for six and one-half of his eight years and the father proved himself to be an ineffectual parent in several respects. By contrast, the children in this case were in the custody of the grandparents from July, 1990 until November, 1992, when the mother filed her petition for custody. This two-and-a-half-year period is a far less significant period than that of *Ellerbe, Albright,* or *Snarski.*

reflects the grandparents' agreement that, if the mother were awarded custody, they would continue to care for the children on a daily basis between the hours of school and the mother's return home from work.

In summary, it appears that the trial court and Superior Court attached far too much weight to the grandparents' claims based on the stability of the home they provided for the children. The courts exaggerated the length of time the grandparents had custody[4] and totally ignored the mother's participation in that stable environment. This factor cannot be viewed as one which strongly indicates grandparental custody over parental custody. On the other hand, the courts appear to have given no weight at all to the parental relationship asserted by the mother. There is absolutely nothing in the record which casts doubt on the expectation that she bears normal human solicitude, care, devotion, and love for her offspring nor any fact which would justify denying the "special weight" and "deference" that are normally to be accorded the parent-child relationship. We cannot avoid the conclusion, on the record of this case, that the parental relationship is by far the most weighty factor in the custody determination, and that the countervailing consideration of the stable home provided by the grandparents is comparatively insignificant as the mother was a constant part of that stable environment. It is therefore necessary to reverse the order of the Superior Court and remand the case for the trial court to grant custody to the mother and to order visitation and other appropriate relief consistent with this opinion.

Order reversed; case remanded for entry of an order granting custody to appellant and other appropriate relief consistent with this opinion.

MONTEMURO, J., files a concurring opinion in which ZAPPALA and CAPPY, JJ., join.

4. The Superior Court erroneously stated that the grandparents had custody of Royce beginning on December 24, 1989, the date the parents moved into the grandparents' home with Royce, rather than July, 1990, when the parents moved out of the grandparents' home, leaving Royce in the custody of the grandparents.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

MONTEMURO, Justice, concurring.

While I am in full agreement with the award of custody to the mother in this case, I write separately because I do not share the Majority's belief that the presumption of parental primacy in custody actions should be abolished. My position is based on the view that the presumption is grounded not in a possessory or proprietary interest, but rather is an outgrowth of parents' responsibility for their children. This is the direction of the Majority in *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). Even with the presumption, if the facts of a particular matter clearly demonstrate that parents are failing to perform their responsibilities, or are doing so inadequately, the best interests of the child dictate placement with a third party. Thus the presumption does not "becloud the ultimate concern," as the Majority here charges, since the problem only arises where the outcome is already in doubt, i.e., where it is not immediately apparent where the best interests of the child lie.

Moreover, there is no particular advantage in dispensing with "presumption," a term readily understood by the bench and bar given its underpinnings, in order to replace it with a "significant factor," which does not recognize the source and importance of the parental interest. This diminution of emphasis could well prove extremely problematical where a third party seeks custody from otherwise adequate parents based on a belief that, e.g., the children are being provided with "wrong" or inadequate religious instruction.

In short, I see no reason to alter a process which already takes into proper account both the ideal and the reality of parental behavior: it begins with the notion that parents conduct the life of the family in accordance with the best interests of their children; however, where they have been

shown not to do so, the best interests of the children compel a change in custody.

ZAPPALA and CAPPY, JJ., join in this concurring opinion.