## Ramsey v. Maurer

C.P. of Fulton County, no. 128 of 1996-C.

*Travis L. Kendall,* for plaintiff.
*Tamela Mellott Bard,* for defendant Maurer.
*Marianne E. Rudebusch,* for defendant Watkins.

WALKER, *P.J.,* April 13, 1998—This case involves a petition filed by Erica Watkins to obtain custody over her daughter Evelyn Watkins, who was born on May 12, 1996. The relevant facts are as follows. Erica Watkins was 16 at the time of Evelyn's birth. She had been

a student at the Milton Hershey School, but was required to leave there once she got pregnant. Evelyn's father, Robert Maurer, had also attended Milton Hershey School. During her pregnancy, Erica Watkins lived at Lourdes House, a Catholic home for pregnant teenagers. After Evelyn's birth, she lived at Evergreen, a homeless shelter for women and children. Robert Maurer lived with his adoptive father, Ernest Maurer, and his new wife, Louise Maurer, since October 1995.

On July 11, 1996, Erica also moved to the Maurers' residence, with Evelyn. On that day, an incident took place which resulted in Erica's loss of custody over Evelyn. Several witnesses testified that Erica was holding Evelyn, and then threw the baby to Robert's new girlfriend, Brandy Johnson, from a distance of four feet. Erica herself testified that she was distraught, but that she did not throw Evelyn. Erica then attempted to commit suicide by taking some pills. She was later found unconscious. Erica was taken to the Hershey Medical Center, and subsequently spent seven days at Phil Haven, a psychiatric hospital, where she received medication and counseling. During Erica's first night at Phil Haven, Ernest and Louise Maurer presented her with a custody agreement, which Robert Maurer had drawn up, giving custody to Diane Ramsey, Robert Maurer's mother and Evelyn's paternal grandmother. Erica was told that it would give Diane temporary custody, "in case something would happen" to Evelyn. Erica signed the custody agreement without reading it. On July 18, 1996, the Honorable William H. Kaye signed an order, based on the custody agreement signed by Erica, awarding custody to Diane Ramsey. Evelyn has been in Diane Ramsey's custody since then. Erica testified that six days after signing the papers and one day before her release from Phil Haven, she requested

Evelyn's return, but Diane Ramsey refused to relinquish custody. Erica then did not see Evelyn for six months, after which she was permitted to see her for two hours at Diane's house each weekend.

On February 25, 1997, Erica Watkins filed a petition to modify custody, seeking primary custody of Evelyn. A conciliation hearing was scheduled for March 18, 1997. Upon the report of the conciliating officer, psychological evaluations of the parties were ordered. The parties also agreed on supervised visits by Erica every other weekend. A hearing was held on December 22, 1997. At that time, this court entered an order modifying the visitation of Erica with her daughter to Thursdays and Fridays of every other week, because those are the days Erica is off work. The hearing had not been completed on December 22, 1997, and was continued on February 19, 1998.

At the hearing, Dr. Nutter, a psychologist, testified that he met with Erica and Evelyn three times in June and July 1997 in compliance with the court order directing the evaluation of Erica's capability to have primary custody of Evelyn. He testified that Erica was attentive to Evelyn's needs and gave her appropriate care. Dr. Nutter concluded in his report that there is no evidence of emotional disturbance, and recommended that primary custody be given to Erica, with supervision by the domestic relations office for several months.

The current situation of the parties is as follows. Diane Ramsey owns and operates a restaurant, the Jolly Farmer in Hustontown, Fulton County, Pennsylvania. She is married to Reuben Ramsey. Whenever she works, Robert Maurer takes care of Evelyn. When Evelyn is sick, Diane takes her to the doctor. It is also Diane who picks up Evelyn after a visit with Erica Watkins.

Robert Maurer and Erica had ended their relationship during the pregnancy. During Erica's pregnancy, he did not accompany Erica to her prenatal classes, nor did he provide support for Evelyn directly after her birth. He is now contributing to her support by buying Evelyn clothes and diapers. After the July 1996 incident, Robert Maurer lived with his mother for approximately one year. He then moved in with a co-worker, Peggy Vogel, for six months, and currently he lives with a girlfriend in her trailer on Walnut Street in McConnellsburg, Fulton County. Robert works at his mother's restaurant. He testified that he has Evelyn for overnight visits two or three times a week and on days that he is off from work. He also testified that he currently always has weekends off, and that he takes care of Evelyn two weekends out of the month. He further testified that he moved out of his mother's house because "it was time to move out." He told Dr. Nutter that Evelyn stayed with his mother when he moved out because he is establishing a life for himself, which would be more difficult to do with a child.

Erica Watkins has made several suicide attempts and/or threats in the past. However, at the time of the hearing, she testified that she had been off medication for six to eight months, and that she is currently living in Harrisburg with her mother, Patricia Watkins. She worked for A-Plus for approximately one year, and is currently employed as a kennel worker for the East Shore Humane Society. She has been granted visitation of Evelyn on the weekends, which were supervised by Patricia Watkins.

This court heard testimony regarding Evelyn's care. Erica Watkins testified that when she receives Evelyn for her visitation, she is sticky and often has diaper rash. She also testified that Diane Ramsey does not

regularly inform her of Evelyn's illnesses and doctors' visits. Diane Ramsey testified that when Evelyn returns from a visit with her mother, she has bad diaper rash, and is often sneezing and has crusty eyes. Diane Ramsey contributes the latter to Evelyn's allergy to Erica's cats. However, Clifford Steinig D.O., the physician who treated Evelyn for this, based his opinion that Evelyn has an allergy for cats solely on the information provided by Robert Maurer and Diane Ramsey that Evelyn had been returned in that condition from her mother's house, where she was exposed to cats. (Deposition of Clifford N. Steinig D.O., plaintiff's exhibit 1, at 7-8, 12-13.) He further testified at his deposition that he did not test Evelyn for cat allergies. (Plaintiff's exhibit 1, at 14.) There was also testimony about a pool party, which was held on June 1, 1996, at the house of Louise and Ernest Maurer. According to several witnesses, Erica allowed Evelyn to get a sunburn, and took her into the pool with her when the water was very cold.

## DISCUSSION

A grandparent may seek custody of a child when three requirements are met: (1) the grandparent has genuine care and concern for the child; (2) the grandparent's relationship with the child began with the consent of a parent or pursuant to an order of court; and (3) the grandparent has assumed the role of parent for a period of 12 months. 23 Pa.C.S. §5313(b). Diane Ramsey, the paternal grandparent of Evelyn, has taken care of Evelyn for more than 12 months pursuant to a court order. Therefore, the requirements of the statute have been met, and this court must consider whether custody should remain with Diane Ramsey, or whether it must be awarded to Robert Maurer or Erica Watkins.

The Pennsylvania Supreme Court has recently addressed the standard to be applied in determining whether custody should be granted to a third party rather than a parent. *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995). The Supreme Court did not apply the existing rule that "parents have a 'prima facie right to custody,' which could be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party." *Id.* at 446, 668 A.2d at 127, citing *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980). Rather, the court abandoned the presumption that custody should be awarded to a parent over a third party, and adopted the rule that a custody award should be made based on the child's best interests, including that child's "physical, emotional, intellectual, moral, and spiritual well-being." *Rowles, supra* at 447, 668 A.2d at 128. One of the factors the court should consider in making this determination is parenthood, which is not a determinative factor, but will be given significant weight. *Id.* at 448, 668 A.2d at 128. Because the *Rowles* decision was a plurality opinion and did not have the support of a majority of the court, some panels of the Superior Court judges have followed the Supreme Court in applying this new standard (see *Campbell v. Campbell,* 448 Pa. Super. 640, 672 A.2d 835 (1996)), while other panels keep following the old rule of applying the presumption that custody should be awarded to a parent (see *J.A.L. v. E.P.H.,* 453 Pa. Super. 78, 682 A.2d 1314 (1996)).

Rather than presuming that custody should be awarded to a parent, this court will make its determination to whom to award custody on the basis of the best interests of the child. This court has considered every factor relevant to the physical, emotional, intellectual, moral, and spiritual well-being of Evelyn. As pointed out by our Supreme

Court, parenthood is a factor of significant weight in this determination. Having considered all the factors, this court finds that it is in Evelyn's best interests to award custody to her mother, Erica Watkins.

Based on the testimony presented at both hearings, this court finds that Robert Maurer does not have a genuine interest in having custody of Evelyn. The mere fact that he has moved out of his mother's house without taking Evelyn with him, and his own statement that it will be difficult to "establish his life" with Evelyn in his custody is a strong indication that Robert Maurer is unwilling to take full responsibility for her. It appears to this court that he is too busy with his own life and his new girlfriend to be able to adequately care for Evelyn. Thus, this court does not find it in Evelyn's best interests to award custody to Robert Maurer. It is, of course, important for the child to have regular contact with her father, and this court will therefore provide for visitation with Evelyn.

This court also did not find it in Evelyn's best interests to remain in the custody of Diane Ramsey. In determining an award of custody, a court shall consider which party is more likely to encourage, permit, and allow frequent contact with the noncustodial parent. 23 Pa.C.S. §5303(a). This court finds that Diane has not facilitated and encouraged the contact between Evelyn Watkins and her mother, Erica. This appears from the fact that she refused to let Erica see Evelyn in the first six months after obtaining custody and then only allowed Erica to see her for two hours each week. Only after a conciliation hearing did she agree to more extended visits. Furthermore, Diane has not taken much effort to inform Erica of such important things as Evelyn's health and doctors' visits. Additionally, it is this court's view that Diane Ramsey's demeanor at the hear-

ing indicated a strong animosity towards Erica. Thus, this court finds that frequent contact and a good relationship between Evelyn and her natural mother would not be encouraged if custody would be awarded to Diane Ramsey. The Pennsylvania Superior Court has found it to be an important factor that the grandmother's attitude would undermine the relationship between the child and his mother if custody would be awarded to the grandmother. *Walkenstein v. Walkenstein,* 443 Pa. Super. 683, 692, 663 A.2d 178, 183 (1995). However, in that case, the court nevertheless granted custody to the grandmother because the child had special needs and the mother experienced outbursts of rage. In the underlying case, Erica, as set forth below, appears to be capable of taking good care of her daughter.

This court considered the testimony given at the hearings regarding Erica Watkins' history of several suicide attempts, the fact that she did not live at home most of her life and during her pregnancy, and about her care of Evelyn. This court acknowledges that Erica has had some problems in her life which resulted in her inability to take good care of Evelyn at that time. To be frank, this court is not very impressed with the behavior of any of the parties to this action. However, this court also found that Erica has matured to a large degree since her last stay at Phil Haven. She has completed her counseling, is no longer on medication, has obtained her G.E.D., and has held a steady job since her release. She has taken appropriate care of Evelyn during her visits, and she has obtained the support of her own mother, Patricia Watkins. This court did not find the testimony that Erica threw her child to Brandy Johnson for a distance of four feet to be very credible. However, even if true, Erica has since matured and shown that she knows how to take care of Evelyn.

Similarly, this court did not find credible the testimony of both sides that Evelyn has diaper rash only when the other has taken care of her. If there was a diaper rash problem, this court feels that Erica will be able to handle it appropriately. Furthermore, the incident at the pool party involving Evelyn's sunburn and swim in cold water occurred when Erica was younger and insecure. This court finds that Erica has matured and is now a stable individual who loves her child. This court believes that Erica will provide a good home for Evelyn and that Evelyn will benefit from being in the care of her natural mother. This court also believes that Erica will encourage Evelyn's frequent contact with her father and her grandparents, including Diane Ramsey. Giving significant weight to take the fact that Erica is Evelyn's mother, this court finds that it is in Evelyn's best interests to award custody to Erica Watkins.

Because of the fact that Evelyn has spent a substantial period of her young life with Diane Ramsey, she must be awarded visitation. This court will award Diane Ramsey and Robert Maurer visitation of Evelyn every other weekend, to be exercised jointly. Diane Ramsey and Robert Maurer shall be responsible for picking up Evelyn and returning Evelyn after visitation. Furthermore, Diane Ramsey and Robert Maurer will have visitation of Evelyn for three weeks each summer. Additionally, this court orders all parties not to smoke around Evelyn. Furthermore, if it appears at some later time that Evelyn is indeed allergic to cats, Erica is ordered to find another home for her cats.

## ORDER

April 13, 1998, after consideration of the evidence presented at the hearings and the letters and memoranda

provided by counsel, this court enters the following order:

(1) Primary physical custody is awarded to Erica Watkins. Custody will be transferred from Diane Ramsey to Erica Watkins within 15 days of the date of this order.

(2) Erica Watkins and Robert Maurer will have joint legal custody of Evelyn.

(3) Visitation is awarded to Robert Maurer and Diane Ramsey, to be exercised jointly, as follows:

(a) every other weekend from Friday at 7 p.m. to Sunday at 7 p.m.

(b) three consecutive weeks each summer; Robert Maurer and Diane Ramsey will notify Erica Watkins of their intent to exercise their three weeks' visitation at least 30 days in advance.

(c) on the following holidays:

(i) Christmas in 1998, Erica Watkins shall have Evelyn on Christmas Eve and Christmas Day until noon; Robert Maurer and Diane Ramsey shall have Evelyn from Christmas Day at noon in 1998 until January 1, 1999, at 7 p.m. This schedule will alternate every year. When Evelyn goes to school, the party entitled to have Evelyn on Christmas Day until noon, will also have her from the time school ends for Christmas break until Christmas Day at noon. This schedule takes precedence over the regular weekend visitation schedule.

(ii) in 1998, Erica Watkins will have Evelyn for the following holidays: Memorial Day, Labor Day, and Thanksgiving; Robert Maurer and Diane Ramsey shall have Evelyn on Easter and July 4th. This schedule will alternate every year.

(iii) on Mother's Day, Erica Watkins shall have Evelyn. If Robert Maurer and Diane Ramsey have custody

that weekend, they shall return Evelyn to Erica on Mother's Day by 9 a.m.

(iv) on Father's Day, Robert Maurer shall have custody of Evelyn from 9 a.m. until 7 p.m.

(d) Diane Ramsey and Robert Maurer shall be responsible for picking up Evelyn and returning Evelyn after visitation.

(3) Erica Watkins, Robert Maurer, and Diane Ramsey will not smoke in the presence of Evelyn during the periods they have custody of her.

(4) If Evelyn is diagnosed with allergy to cats, Erica Watkins is directed to find another home for her cats.

(5) Erica Watkins, Robert Maurer, and Diane Ramsey shall notify each other promptly of the occurrence of doctors' visits and medical emergencies.

(6) This court has requested Children and Youth Services in Dauphin County to assist Erica Watkins in the care of Evelyn and to provide any help needed in regard to Erica Watkins' parenting skills for at least several months. The total period of support is to be decided by Children and Youth. Erica Watkins is ordered to cooperate with Dauphin County Children and Youth Services.