**Walker v. Even**

*Karen G. Muir,* for plaintiff.
*Laura Robbins,* for defendant.

RUEST, *J.,* October 14, 2009—Presently before the court are a complaint for custody filed by plaintiff Clinton Walker and a petition to relocate filed by defendant Alicia Even. A hearing was held on September 1, 2009. Both parties submitted proposed findings of fact, proposed conclusions of law, and briefs. Upon consideration of the evidence and arguments presented, the court finds as follows:

## FINDINGS OF FACT

(1) The parties are the parents of one minor child, Jacey Walker, whose date of birth is June 11, 2007.

(2) Plaintiff Clinton Walker (Father) filed an emergency petition for custody and a custody complaint on July 6, 2009.

(3) Defendant Alicia Even (Mother) filed a petition to relocate on July 30, 2009.

(4) A custody hearing was held on September 1, 2009.

(5) Mother is not originally from Pennsylvania.

(6) Mother and Father resided in Centre County, Pennsylvania, from the time the minor child was born until Mother left and the parties separated in June of 2009.

(7) Mother and Father were together for a total of three years, and separated twice during that time.

(8) Mother has two children from a previous marriage, Erika Sims, age 18, and Taylor Sims, age 15. Both children lived with Mother, Father, and the minor child in Pennsylvania for three years.

(9) The father of these two children continues to reside in Manteca, California, and continues to be involved in their lives.

(10) Prior to moving to Pennsylvania, Mother lived in California for 28 years.

(11) Mother's family relocated to Washington State; she relocated there as well at the time.

(12) Mother left Washington to escape an abusive father.

(13) Mother divorced her husband in California and moved to Pennsylvania.

(14) Mother has a job in Pennsylvania. She does not yet have employment in California.

(15) Father frequently drinks, often alone, and has driven drunk while having a passenger in his vehicle.

(16) Father does most of his drinking on weekends, when he does not have work.

(17) Summer is Father's busiest time for working.

(18) Father works for Glenn O. Hawbaker Inc., from 4:30 p.m. until 4 a.m., Monday through Thursday, and Friday from 4:30 p.m. until 2:30 a.m.

(19) Father also works approximately three Sundays per month, from either 2 p.m. until 12 a.m., or 3 p.m. until 1 a.m.

(20) Father earns one day off for every 250 hours he works.

(21) Father's take-home pay, after taxes and deductions, is $750 per week. Father also receives benefits.

(22) Father is periodically laid off for several weeks at a time.

(23) Father was most recently laid off in January 2009, and in the winter of 2008.

(24) Father speaks to the minor child, in California, approximately twice a day.

(25) Father's extended family, including Father's sister-in-law, Monica Lingle, and the minor child's paternal grandfather, James Walker, would help provide childcare and supervision for the minor child during any period of Father's custody.

(26) Father has a bond and a caring relationship with the minor child.

## CONCLUSIONS OF LAW

(1) The paramount concern of the court in any custody matter is the best interest of the child. *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992).

(2) A child's best interest is determined on a case-by-case basis. *Saintz v. Rinker,* 902 A.2d 509, 512 (Pa. Super. 2006).

(3) There is no single overriding factor, rather, the court must consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of the child in determining the best interest of the child. *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995).

(4) "[S]iblings should be raised together whenever possible." *Pilon v. Pilon,* 342 Pa. Super. 52, 55, 492 A.2d 59, 60 (1985). This applies to half-brothers and half-sisters as well. *In re Davis,* 502 Pa. 110, 124, 465 A.2d 614, 621 (1983).

(5) In custody relocation matters, "[t]he task of [the] court is to sacrifice the non-custodial parent's interest as little as possible in the face of competing and often compelling interest of a custodial parent who seeks a better life in another geographical location." *Gruber v. Gruber,* 400 Pa. Super. 174, 183-84, 583 A.2d 434, 438 (1990).

(6) The *Gruber* factors the court is to consider are:

(a) "the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children, and is not the result of a momentary whim on the part of the custodial parent; . . .

(b) "the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; . . .

(c) "the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing

relationship between the child and the non-custodial parent." *Gruber v. Gruber,* 400 Pa. Super. 174, 184-85, 583 A.2d 434, 439 (1990).

## DISCUSSION

The paramount concern in a child custody case is the best interest of the child. *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992). There is no single overriding factor; rather, the court must consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of a child in determining the best interest of the child. *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995). The parties do not dispute that Mother has been the minor child's primary caretaker and should have primary physical custody.

There are three factors, set forth in *Gruber v. Gruber,* 400 Pa. Super. 174, 184-85, 583 A.2d 434, 439 (1990), that the court must consider when deciding a relocation case: (1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children, and is not the result of a momentary whim on the part of the custodial parent; . . . (2) the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; . . . and (3) the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

Mother has no significant contacts in Pennsylvania. She moved to Pennsylvania to live with someone she

met on the internet, and later met Father. Mother spent most of her life in Manteca, California, where most of her friends and the father of her two eldest children reside, or in Washington, where her extended family resides. Mother's support network, even while living in Pennsylvania, has been based in California and Washington, and available to her only over the telephone and internet. Mother has no permanent residence in Pennsylvania. She has, however, secured a residence with her long-time friend, Kathleen Rainwater, in California. Furthermore, the minor child is only 2 years old and is not yet enrolled in school. Thus, any move will not require the minor child to change schools.

Mother's motives for her move are to be closer to her support network. Mother testified extensively to Father's abilities as a parent and to her desire for him to continue to have a relationship with his daughter, and vice versa. She is clearly not seeking to impede or destroy the relationship that already exists.

Alternative arrangements are available for Father to continue to have a regular, continuing, and meaningful relationship with the minor child. The child can travel between Pennsylvania and California, and can spend extended periods of time with Father. Once the child begins school, the parties can revisit where she should reside and what time she should spend where.

Both parties testified to Father's significant alcohol use. The court questions Father's personal opinion that he can drive "fine" with a blood alcohol concentration of 0.18 or 0.19. Father was arrested for DUI in 2006 and completed the ARD program at that time. Father's extended family asserted that if the court were to order

Father to abstain from alcohol, they would assist Father in complying with this order. The court intends to take the family up on this offer and to order Father to avoid drinking when he has the minor child.

Also of concern is Father's work schedule. Because he works such extreme hours, he would have a difficult time supervising the minor child during his periods of custody. Fortunately, the court notes the winter months are often slower times for Father, with frequent periods of layoffs. This period provides an excellent opportunity for Father to have time with the minor child.

It is in the minor child's best interest to permit Mother to relocate to Manteca, California. Allowing this move will ensure that Mother has a sufficient support network to raise the minor child in an emotionally healthy environment. It will also allow Mother to have a place to live and will allow Mother's son, Taylor, to continue to live with his younger sibling. Mother's interest in moving is not motivated by any animus toward Father's relationship with the minor child or an attempt to interfere with that relationship. Reasonable alternative arrangements can be made for the minor child to have a continuing and healthy relationship with Father.

Accordingly, the following is entered:

## ORDER

And now, October 14, 2009, upon consideration of defendant's petition for relocation, it is hereby ordered that said petition is granted. The attached order sets forth the specific custody schedule and provisions. [Not published herein.]