J-A02039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.K. | : | |
| | : | |
| Appellant | : | No. 949 WDA 2020 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.K. AND P.K. | : | |

Appeal from the Order Entered August 28, 2020
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2013-2753

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: MARCH 11, 2021**

M.K., Mother, appeals from the custody order entered August 28, 2020,[1] Mother claims that the court abused its discretion when it awarded Father primary physical custody and awarded B.K. and P.K., Maternal Grandparents ("Grandparents"), partial physical custody. She further claims that the court erred when it directed that Grandparents' overnight custody should take place on weekends and gave Grandparents a right of first refusal for child care, and

---

[1] The court's August 28, 2020 order struck and replaced language in the underlying July 30, 2020 custody modification order.

held her in contempt of a prior order for moving without providing timely written notice to Father. We affirm.

> [Child] was born [in August 2013]. Five (5) days after his birth, Mother and Father separated. They were married for five (5) months prior to their separation. Mother and [Child] immediately went to live with her parents, [Grandparents]. [Grandparents] welcomed Mother and [C]hild into their home. For six years they functioned as a family unit, basically doing everything together. During the first three (3) years of [Child's] life, Father never stopped pursuing more physical custody time with [Child]. Finally, in April of 2016, Mother and Father entered into an Agreement that provided for shared physical custody of [Child]. [The court reduced the Agreement to an order, in June 2016, that required Father and Mother to give the other parent 30 days' notice of intent to change address.]
>
> Until that Agreement, [Child] had lived primarily with his Mother and [Grandparents]. After the Agreement, [Child] continued to live with his Mother and [Grandparents] during Mother's periods of physical custody. This arrangement lasted until August 29, 2019. On that date, Mother abruptly decided to go live with her fiancé[, C.C. ("Fiancé")], who lived over an hour away. She relocated without providing any notice to Father. Furthermore, since that date, Mother has refused to allow [Grandparents] to see [Child] during her periods of physical custody. Father, on the other hand, has allowed [Grandparents] visitations with [Child] during his periods of physical custody. Finally, in January of 2020, Father purchased a home in [Child's] school district, which is also where [Grandparents] live. He had previously lived just across the border in Ohio.

Trial Court Opinion, 9/21/20, at 1-2 (record citations omitted).

Approximately six weeks after moving into Fiancé's home, on October 8, 2019, Mother filed a petition for modification of custody and a notice of proposed relocation. Father filed a petition for contempt, on October 23, 2019, stating that Mother moved without proper notice, and objecting to the notice of relocation. On November 25, 2019, Grandparents moved to intervene and

sought partial custody, and objected to the relocation. The parties agreed that Grandparents had standing to seek custody.

The court conducted a three-day trial in May 2020, on the petitions for contempt and custody. On July 30, 2020, it applied the custody factors and awarded primary physical custody to Father, giving him 17 days of custody in all months (except February in which he would have 16 days). Mother was awarded the remaining time. Additionally, Grandparents were awarded two overnights and two dinners monthly, one of each coming from each parent's custodial time. Finally, the court found Mother in contempt for failing to give 30 days' notice of her intent to change address. As sanctions, the court barred Mother from repudiating her position that her move did not constitute a relocation, and ordered her to bear responsibility for transporting Child.

Grandparents moved for reconsideration, and on August 28, 2020, the trial court granted the motion and modified its order to direct that Grandparents' custody occur on weekends, give them a right of first refusal for any child care that would be for more than three hours, and specify the schedule for their vacation and holiday time. Mother timely appealed.

The statement of questions involved in Mother's brief lists the following 11 questions:

> 1. Whether the trial court erred by focusing nearly all of the custody factor analysis on Mother's and Father's relationship with maternal grandparents, where Grandparents were not a "parent" as required in factor 8, and where Father's relationship with grandparents became conciliatory only shortly before the trial[;]

- 3 -

2. Whether the trial court erred by awarding primary custody to Father and perpetuating a custody schedule which changes every month with only ten days' notice to Mother and is tailored 100% to Father's erratic work schedule, where the schedule fails to create stability or consistency for Child, leaves Child in a school district where neither parent will be present approximately half of the month, awards overnights to Father at times where he admits that he cannot be available, fails to grant a right of first refusal to Mother, and makes it impossible for Mother to find flexible employment to support herself and Child[;]

3. Whether the trial court's determination was manifestly unreasonable and unsupported by the record when the court engaged in complete speculation that Mother would be less able than Father and Grandparents to protect the Child from abuse for the sole reason that Mother would require childcare in order to work[;]

4. Whether the trial court erred in its determination that Mother's cohabitation is contrary to the best interest of the Child and that her relationship demonstrated immaturity and emotional instability such that Mother was unfit to have primary physical custody[;]

5. Whether the trial court erred in refusing to award primary physical custody to Mother by ignoring Mother's role of being the parent who has consistently remained with the Child to attend to the Child's medical needs, educational events, and to be "on call" for the Child both during her custodial periods and during Father's custodial periods[;]

6. Whether the trial court erred by placing all of the burden of transporting Child on Mother, both as a contempt sanction and in the regular custody order as an impermissible punishment, where Father is available to assist with transportation and intervenor [] Grandparents agreed that they were willing to assist with transportation[;]

7. Whether the trial court abused its discretion and committed an error of law for levying against Mother contempt sanctions, namely having to provide all transportation for the Child and that Mother cannot contest that her move constitutes a relocation, where the sanction has no expiration date and no purge condition[;]

- 4 -

8. Whether the trial court erred by modifying the prior custody order to shift Grandparents' custodial overnights to weekend overnights to the detriment of the best interest of the Child and of Mother's and Father's ability to exercise custody of Child on the weekends[;]

9. Whether the trial court erred by granting a three hour right of first refusal for child care to [] Grandparents where Mother's ability to work was already negatively impacted by the irregular custody schedule and will now be further impacted by mandating childcare by Grandparents and that Mother provide transportation to Grandparents for the childcare. The court's award is not in the best interest of the child and is a punishment toward Mother[;]

10. Whether the trial court erred in granting Grandparents with evening custody for which Mother is required to transport Child to Grandparents where the grant is more than was requested by Grandparents, is contrary to the best interest of the Child, and is seemingly a punishment against Mother[;]

11. Whether the trial court erred in modifying the award of custody to Grandparents where the court did not analyze either the custody factors at 23 Pa.C.S.A. § 5328 (a) or 23 Pa.C.S.A. § 5328(c), where the schedule entered by the court interferes with the parent-child relationship between Mother and Child and is not in the best interest of the Child under either set of the factors.

Mother's Br. at 4-5.

Although her statement of questions involved lists 11 questions, Mother's argument is not divided into 11 sections, as our Rules of Appellate Procedure require. **See** Pa.R.A.P. 2119(a). Instead, Mother has divided her argument into three main sections, with a total of 12 subheadings within those three main sections, for a total of 15 sections. In addition to the fact that the sheer number of sections does not match the number of questions Mother listed as "involved," the various sections do not obviously address any particular question Mother identified. The result is that it is exceedingly

difficult for us to determine which arguments bear on which questions, or even if Mother argues all of the questions she identified.

As a result, our appellate review is hampered, and we could treat all of Mother's issues as waived. However, because Child's interests are at stake, rather than just Mother's rights, we will address the arguments we perceive in the argument section of Mother's brief. If she intended to raise any other issue, she waived it by failing to provide a brief in compliance with the Rules of Appellate Procedure. We will divide our discussion into the three main issues into which Mother divided her argument: (1) the trial court abused its discretion by granting Father primary physical custody, (2) the trial court abused its discretion when it granted Grandparents partial physical custody, and (3) the trial court erred when it granted Grandparents' motion for reconsideration and modified its original custody order.

We review a custody order for an abuse of discretion. *See G.A. v. D.L.*, 72 A.3d 264, 268 (Pa.Super. 2013) (quoting *Collins v. Collins*, 897 A.2d 466, 471 (Pa.Super. 2006)). We must accept a trial court's factual findings when the record supports them, and we defer to the trial court's credibility determinations. *See Id.* We must determine "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Id.* (quoting *Collins*, 897 A.2d at 471). We will reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Id.* (quoting *Collins*, 897 A.2d at 471).

This Court consistently has held that:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)).

The Child Custody Act requires a trial court to consider all of the Section 5328(a) factors when "ordering any form of custody." 23 Pa.C.S.A. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *R.L. v. M.A.*, 209 A.3d 391, 395 (Pa.Super. 2019) (quoting *S.W.D. v. S.A.R.*, 96 A.3d 396, 401 (Pa.Super. 2014)). The court does not need to explain its decision in detail; rather, "all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.* (quoting *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013)).

In child custody cases, the paramount concern "is the best interests of the child." *Id.* (quoting *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018)). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* (quoting *M.J.N. v. J.K.*, 169 A.3d 108, 112 (Pa.Super. 2017)). The custody factors to be considered include:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant

factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A

party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

\* \* \*

**(c) Grandparents and great-grandparents.—**

\* \* \*

(2) In ordering partial physical custody or supervised physical custody to a parent's parent or grandparent who has standing under section 5325(3), the court shall consider whether the award:

(i) interferes with any parent-child relationship; and

(ii) is in the best interest of the child.

23 Pa.C.S.A. §§ 5328(a), (c)(2).

**Award of Primary Physical Custody to Father**

In first section of her argument, Mother claims that the trial court erred in awarding primary physical custody to Father. *See* Mother's Br. at 16-29. Mother contends that the trial court did not place enough weight on the fact that she provided the greatest stability for Child because she has attended all of his academic events and medical appointments. She argues that Father's changing work schedule does not provide Child enough stability. Mother notes that she is available to Child for the entirety of the month, whereas Father is not available during his non-custodial time. She contends that the court should

have placed greater weight on the fact that she is available to parent outside her own custodial period. *See id.* at 25-26 (citing *C.M.K. v. K.E.M.*, 45 A.3d 417 (Pa.Super. 2017)). Mother argues Father's changing work schedule will interfere with her ability to find employment and that she "deserves to be employed to earn a living for herself" and Child. *Id.* at 26.

> In its 1925(a) opinion, the trial court explained that it
>
> considered the sixteen (16) custody factors pursuant to 23 Pa.C.S.A. § 5328. In doing so, [it] found that it was in the best interest of the child to award primary physical custody to Father. However, it should be emphasized that the schedule of physical custody remains the equivalent of the schedule Mother and Father have had since 2016 when they agreed to share physical custody. Due to Father's occupation as a corporate pilot, he does not know his work schedule until the 20th day of each month for the following month. When Father is available for his period of physical custody, he is 100% available for the child. When he is flying, he is not available at all. . . .

Trial Court Opinion, 9/21/20, at 3-4.

> The analysis of each factor and the weight afforded each factor is summarized as follows: During her periods of physical custody, Mother has not allowed her own parents to see their only grandchild since August of 2019. Her reason for this: she and the minor child were kicked out of her parents' home after living there for six (6) years because her relationship with Fiancé was progressing too quickly for her parents. The court finds this reason lacks any credibility whatsoever. Father, on the other, has allowed the Maternal Grandparents to see the minor child during his periods of physical custody. Therefore, the factor of which party is more likely to encourage and permit frequent and continuing contact between the child and another party overwhelmingly weighs in favor of Father and against Mother when considering the best interest of the child.
>
> The factor of present and past abuse has been given no weight because Mother voluntarily entered into a shared physical custody arrangement with Father in 2016, and it has worked well since

that time. The court finds that there is no continued risk of harm to the minor child. More importantly, the court finds that Father can provide better physical safeguards and supervision of the minor child due to Mother's desire to work full time in Pittsburgh and the fact [Fiancé] works full time. When Father is unavailable due to his job as a pilot, the Maternal Grandparents would be available. This factor weighs in favor of Father.

The factors involving parental duties performed by each party; which party is more likely to maintain a loving, stable, consistent, and nurturing relationship; and, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs, favors neither party. The child is very well cared for when in the physical custody of both parties. Therefore, these factors have been given little weight when considering the best interest of the child.

The factors involving the need for stability and continuity in the child's education, family life and community life, and the availability of extended family, both strongly favor Father. After the minor child lived with the Maternal Grandparents for six (6) years and completed Kindergarten at Artman Elementary school, Mother abruptly, unilaterally, and without notice to Father, moved to [Fiancé's] residence in McCandless Township. Mother has no family in McCandless Township. Father has his aunt and the Maternal Grandparents in Hermitage. These factors were given considerable weight when considering the best interest of the child.

The factor pertaining to the attempts of a parent to turn the child against the other parent is not relevant to this analysis involving Father's and Mother's Petitions for Modification of Custody. There was no testimony concerning either party attempting to turn the child against the other party. However, during his interview, the minor child stated that Mother had told him things about the Maternal Grandparents that this court has found to be distortions of truth or flat out lies. When considering Grandparents' Custody, this factor is squarely against Mother and has been afforded considerable weight. The same holds true for the factor concerning the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. As evidenced by success of the 2016 agreement concerning shared physical custody, the level of conflict between Father and Mother is relatively low. However, between Mother and Maternal Grandparents, the level of conflict is extremely high as evidenced

by the fact Mother has not allowed her parents to see their only grandchild since August of 2019. When considering Grandparents' Custody, this factor is squarely against Mother and has been afforded considerable weight when considering the best interest of the child.

The proximity of the residences of the parties and the party's availability to care for the child or make childcare arrangements are factors that favor Father and, incidentally, the Maternal Grandparents. Mother has moved over an hour away and intends to seek full time employment. Father now lives in Hermitage, minutes from his aunt and the Maternal Grandparents. Father may be unavailable when he is working, but he certainly can make appropriate childcare arrangements when he is unavailable. More importantly, Father is 100% available when he is not working. These factors have been given significant weight when considering the best interest of the child.

With respect to the history of drug and alcohol abuse of a party and the mental and physical condition of a party, neither of these factors are afforded any weight when considering the best interest of the child. Despite the admissions of alcohol abuse in his blog, Hoff n' Plonker, there has been no testimony concerning Father abusing alcohol when he had physical custody of the minor child. Additionally, because Mother voluntarily entered into the custody agreement with Father in 2016, any allegations of mental health issues on the part of the Father are waived.

Finally, with respect to the issue of cohabitation, the Court reiterates its finding that the reason Mother gave for cutting off all ties between the Maternal Grandparents and the minor child, i[.]e. that the Maternal Grandparents kicked their only daughter and grandchild out of their home after six (6) years because her relationship with [Fiancé] was progressing too quickly, not only lacks credibility, it demonstrates that Mother is so immature or emotionally unstable that she may be unfit to raise the minor child. Accordingly, primary physical custody is awarded to Father.

Trial Ct. Op., 7/30/20, at 16-18 (some capitalization omitted).

Upon review, we conclude that the record supports the trial court's factual findings and credibility determinations and that the court did not abuse its discretion in awarding Father primary physical custody. The court found,

and the record reflects, that Child is very well cared for by both Father and Mother.

Further, we are not persuaded by Mother's claim that the court abused its discretion by not weighing in her favor the fact that she is available during non-custodial times, whereas Father at times is not. Mother based this claim on *C.M.K.*, 45 A.3d at 426. There, we applied the statutory definition of a "relocation" and concluded that the proposed move there would constitute a relocation because it would impair the father's ability to exercise his custodial rights. We pointed out that the father had "regular and continued involvement co-parenting in different aspects of the minor child's life that go beyond his periods of partial physical custody," and is often involved in the child's school and sports functions. *Id.* We thus concluded that allowing mother to move the 68 miles she proposed threatened "significant impairment" of the father's ability to exercise custodial rights, and the move constituted a relocation. *Id.*

*C.M.K.* has no application here. Father testified that Mother's move had not interfered with his exercise of his custodial time, and the trial court therefore concluded that the move was not within the statutory definition of a "relocation." Mother does not dispute that conclusion. Moreover, even if *C.M.K.* were applicable, it does not compel us to find that the trial court abused its discretion by not holding against Father his potential unavailability during non-custodial times. If anything, *C.M.K.* strengthens Father's argument that granting Mother primary custody would result in interference with his exercise of custodial rights, because of Mother's move.

Finally, we conclude that the trial court did not abuse its discretion when it chose not to place greater weight on Mother's desire to start her career. Mother's speculation regarding the difficulty that she would face with finding employment based on the custody schedule, or the burdensome transportation requirements associated with the right of first refusal for child care in the court's order, may be turn out to be well-founded. However, Mother introduced no evidence that she tried to find employment, either in Hermitage, where the transportation burden would be minimized, or in Pittsburgh, where she claims there are more work opportunities for people with a marketing degree. If Mother chooses to start applying for jobs, and her concerns are substantiated, she may file a petition for modification and introduce that evidence. Mother's first issue does not merit relief.

**Award of Partial Physical Custody to Grandparents**

Mother's next issue concerns the trial court's award of partial physical custody to Grandparents. Mother claims that the trial court erred in its evaluation and weighing of the hostile relationship between herself and Grandparents, and failed to place sufficient blame on Grandparents for the deterioration of the relationship. Mother claims that the trial court abused its discretion and injected its concerns about Mother's relationship with Fiancé into its decision. In support of her argument, Mother relies on two cases: **Rowles v. Rowles**, 668 A.2d 126, 128 (Pa. 1995) ("Parenthood, though not paramount, will always be a factor of significant weight."), and **V.B. v. J.E.B.**, 55 A.3d 1193, 1202 (Pa.Super. 2012) (trial court abused its discretion by

using father's prior polyamorous relationship, which had no negative effect on children, as ground to award primary physical, and *sua sponte* award legal custody to grandparents). Finally, Mother claims that the trial court placed too much weight on Father's positive relationship with Grandparents. She argues that Father had a poor relationship with Grandparents until recently, and although the relationship is better than it was, the court erred in elevating the relationship in the factor analysis.

We review the trial court's award of partial physical custody to Grandparents for an abuse of discretion. We defer to the trial judge on issues of credibility and weight of the evidence, as the judge has had the opportunity to observe the proceedings and witnesses. *See K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa.Super. 2015).

Before awarding partial physical custody to grandparents, a court is required to determine whether an award interferes with any parent-child relationship and whether the award is in the best interest of the child. *See* 23 Pa.C.S.A. § 5328(c)(2). The court must do so by considering the factors set forth in the Child Custody Act. *See* 23 Pa.C.S.A. § 5328(a). The statutory presumption favoring an award of custody to parents over third-parties is inapplicable where grandparents seek only partial physical custody. *K.T.*, 118 A.3d at 1159 (citing 23 Pa.C.S.A. § 5327(b) (setting forth presumption in cases concerning primary physical custody)). Finally, a court must consider Pennsylvania's strong public policy "favoring grandparent involvement in a child's life." *Id.* at 1164.

- 15 -

Here the trial court explained that it found that Grandparents' "modest request of two (2) overnight periods of partial custody per month and two (2) dinner periods of partial custody per month, one of each coming from Mother's period of partial custody and the same from Father's period of partial custody, did not interfere with any parent-child relationship." Trial Ct. Op., 9/21/20, at 4. The court explained that it "found that Mother's refusal to allow [Grandparents] any contact with [Child] during her periods of physical custody adversely effected [Child]. After six (6) years of living with them, [the trial court] found it was not in [Child's] best interest to be cut off from his [G]randparents in such a manner." *Id.* at 7.

Upon review, we conclude that the trial court did not err or abuse its discretion when it awarded partial physical custody to Grandparents. The record does not support Mother's claim that the court based its decision on its view that Mother's conduct was immoral. In its analysis of Mother's cohabitation, the court did not find the cohabitation itself to be against Child's interest. Instead, it found that the cohabitation caused Mother to cut off all ties with Grandparents, which the court found was not in Child's best interest. We will not second-guess the court's credibility determination. Mother's contention that the court inserted its notions of morality into its decision is without foundation. The cases Mother cites in this regard are easily distinguishable. Both **Rowles** and **V.B.** were cases where the trial court removed primary physical custody from a parent and awarded that primary custody to grandparents. **See Rowles**, 668 A.2d at 128; **V.B.**, 55 A.3d at

- 16 -

1202. Here, the trial court did remove Mother's primary physical custody of Child. Rather, it awarded primary physical custody to Father, not Grandparents, whom it gave only partial physical custody, and even that award was modest. It was enough to enable them to maintain their relationship with Child, but far less than the significant role that they had been playing in Child's life when Mother supported the relationship.

The record supports the trial court's decision that spending time with Grandparents is in Child's best interest. As the trial court observed, Grandparents have been a positive constant presence in Child's life since his birth. In the ensuing six years, Child lived with Grandparents during his custodial time with Mother. Grandparents attended doctors' appointments and school events. They provided a loving and safe home for Child where he thrived. Indeed, Father recognized the positive impact that Grandparents were on Child's life and worked to establish a cordial relationship with Grandparents. Prior to the modification of the custody order, Father realized that spending time with Grandparents was so greatly in Child's best interest that he provided Child an opportunity to spend time with Grandparents during his custodial time.

Furthermore, the record supports the trial court's finding that partial custody by Grandparents would not interfere with the mother-child relationship. It is evident from Mother's testimony that despite her anger toward her parents, she does not believe that they mistreat Child. Rather, her concerns center on Grandparents' dislike of Fiancé and their disapproval of

Mother's relationship with him. It is apparent, however, that Mother's continued relationship with Fiancé does not preclude Grandparents from maintaining their relationship with Child. The hostility between the parties, and Child spending two overnights and two dinners monthly with Grandparents, does not interfere with the mother-child relationship. Hence, we conclude that the trial court did not abuse its discretion when it awarded Grandparents partial physical custody.

**Motion for Reconsideration**

Finally, Mother claims that the trial court erred when it granted Grandparents' motion for reconsideration of its first custody order without re-analyzing the potential interference with her relationship with Child.[2] She alleges that the provision in the modified order specifying that Grandparents' overnights should take place on weekends interfered with her relationship with Child because now, rather than having custody of Child for an average of two Saturday/Sunday overnights a month, she will have to cede one of these days to Grandparents.

---

[2] In the midst of Mother's argument concerning granting of Grandparents' motion for reconsideration, Mother argues that the transportation provisions that the court included in both the original and modified order as a sanction for Mother's moving without notice is manifestly unreasonable. However, aside from two boilerplate citations that Mother offers in support of the proposition that a custody award may not be modified to reward or punish a parent, Mother has completely failed to support her argument with citation to pertinent legal authority. Therefore, we conclude that Mother has waived this claim.

The trial court did not have to perform a complete analysis of all custody factors before it granted reconsideration, because it was only entertaining a modification of a discrete aspect of its custody order that would not change the award of legal or physical custody or change the amount of custodial time either party had. Rather, it only needed to determine that any modification that it did order was in Child's best interest. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa.Super. 2014) (concluding that modification which did not change underlying award of custody—court was not deciding legal or physical custody, or changing amount of custodial time party had—did not implicate directly section 5328(a)).

Instantly, the trial court observed that after the court issued its initial custody order on July 30, 2020, Grandparents

> filed a Motion for Reconsideration regarding their schedule of periods of partial custody. Paragraph 2(d) of the Order dated July 30, 2020 contained no schedule for [Grandparents'] periods of partial custody occurring on a monthly basis, nor did it contain a right of first refusal regarding third-party childcare in excess of three (3) hours, a vacation period of one week of partial custody in the summer, and a proposed holiday schedule. All had been requested in the Proposed Order accompanying [Grandparents'] Findings of Fact and Conclusions of Law.

> Pursuant to 23 Pa.C.S.A. §5328(c)(2) this Court found that the [Grandparents'] requested changes did not interfere with any parent-child relationship and was in the best interest of [Child]. The two periods of partial custody on the weekends from Noon on Saturday to Noon on Sunday are attributed to each parent, and the timing of these periods are in [Child's] best interest because he is attending school. The vacation period in the summer is in [Child's] best interest because of family's affinity for Disney World. Finally, the right of first refusal concerning childcare in excess of three (3) hours does not interfere with either parent's parent-child

> relationship since [Grandparents] have agreed to transport [Child.]

Trial Ct. Op., 9/21/20, at 7.

The record support's the trial court's determination that the modification of its order—providing a schedule for Grandparents' previously awarded partial custody and awarding Grandparents' with a right of first refusal for childcare—was in Child's best interest and did not interfere with the parent-child relationship. The record reflects that Child has had a strong and incredibly beneficial relationship with Grandparents since his birth. The trial court, Grandparents, and Father all agree that maintaining this relationship is in Child's best interest. The trial court's August 28, 2020 modification of its original custody order served to facilitate its original custody award to Grandparents and was clearly in Child's best interest.

For the aforementioned reasons, we find that the trial court's award of primary physical custody to Father and partial physical custody to Mother and Grandparents was in Child's best interest. Therefore, concluding that the trial court did not abuse its discretion in awarding custody as such, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/11/2021